### Shook Nalley v. The State.

No. 3851.   Decided February 20, 1907.

**Assault to Murder—Insufficiency of Evidence—Carrying Distance.**

Where upon trial for assault with intent to murder the evidence showed that the defendant got his pistol and followed the prosecutor for a block or two with his pistol in his hand, stating that he would kill him; but did not undertake to use the pistol; did not shoot at him or present his pistol on him or snap it, and the parties were from sixty to seventy yards apart, the evidence was not sufficient to sustain a conviction for assault with intent to murder, even if it be conceded that defendant got within carrying distance of the prosecutor.

Appeal from the District Court of McLennan.   Tried below before the Hon. Sam R. Scott.

Appeal from a conviction of assault with intent to murder; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*Jennings & Hamilton,* for appellant.—We submit that the proof wholly fails to establish anything except a threat and perhaps aggravated assault in using a pistol in a threatening manner so as to frighten V. A. Nalley. Lee v. State, 34 Texas Crim. Rep., 519; Flournoy v. State, 25 Texas Crim. App., 244; Courtney v. State, 13 Texas Crim.

App., 505; Davis v. State, 15 Texas Crim. App., 475; Wood v. State, 27 Texas Crim. App., 403; Watts v. State, 30 Texas Crim. App., 537.

*F. J. McCord,* Assistant Attorney-General, for the State.

### ON MOTION FOR REHEARING.

#### February 27, 1907.

DAVIDSON, PRESIDING JUDGE.—On a former day of this term the judgment in this case was affirmed because the stenographic statement of facts sent up with the record could not be considered, first, because it was not signed by the stenographer; second, not approved by the court, and third, it was not filed in the trial court, therefore, the case was treated as one without the evidence being before this court. A motion for rehearing has been filed, and a reconsideration asked, accompanying which is a proper statement of facts, the mistake being explained by the clerk in sending up a sufficient statement of facts. He certifies that it arose from his oversight in sending up a copy instead of the original, which had been properly approved and filed. We, therefore, will review the case with the evidence now before us.

It is unnecessary, as we view this record, to consider any question except the alleged insufficiency of the evidence. The conviction was for assault to murder, five years being alloted appellant in the penitentiary. There is quite a lot of testimony permitted to encumber the statement of facts with reference to family troubles, in which appellant and his uncle, the alleged assaulted party, were prominent, growing out of what the uncle states was mistreatment of appellant's wife by appellant, and a transfer of some of appellant's land, perhaps the homestead, as they call it, to the uncle by a brother of appellant, to whom appellant it seems had previously transferred the property. This transfer seems to have been the immediate cause of the trouble. On the occasion of the difficulty at appellant's house a conversation occurred between appellant and his uncle, V. A. Nalley. Appellant remarked that he was going to Hill County to see his brother Necher in regard to a re-transfer of the property from Necher to himself. V. A. Nalley, the assaulted party, remarked, "If you are going to have that deed transferred to you, it is not necessary for you to go. I had Necher to transfer it to me." Appellant remarked, "Did you, you God damn old son of a bitch. I will kill you and Necher before to-morrow night," and ran in the house. The witness' pistol was lying on the table in appellant's house. This witness thus testified: "He got the pistol and pursued me. I never discovered him until I got on the corner of Webster street. He called to me, 'You God damn old son of a bitch, you just as well stop. I am going to kill you.' As a matter of course, as a sensible man, I kept moving on. He kept hollering at me. I went through Mr. Ratcliff's premises. I remem-

bered he had a pistol there on his premises, and I went through his house and missed the pistol, and went out on the back, climbed the fence, and went up to Mr. Janes' place and telephoned for a police, and they came and arrested Shook Nalley." This witness says while he was being pursued by appellant, appellant had a pistol, and he thought he carried it in his right hand; that appellant never got within fifty steps of him as well as he could guess at the distance. Being asked the direct question as to how close appellant was to him at the time he saw him with the pistol, he replied: "I do not know. I think he was about sixty or seventy yards. I think I was about half way of the block, and he had just turned the corner a little. I could not be exact about that." He further says appellant stated he was going to kill him; that he did not get close enough. The pistol was a 45-caliber five-shooter for short cartridges. Being asked the question how far a 45-caliber will kill a man, he answered: "I do not suppose with them short cartridges you could kill a man more than twenty-five or thirty steps with them. I do not know anything about it. I am just guessing at that." · He further testified that appellant did not shoot. This witness was asked if appellant snapped the pistol at him. He answered, "If he did I did not hear it." He further stated that if appellant tried to shoot him he did not know. "Q. The only thing he said he was going to kill you? A. Yes, sir. Q. Made no effort to kill you? A. He said I had better stop. Q. The only thing you would testify to is that he said he was going to kill you? A. That is what he said. Q. Made no effort to kill you? A. He did not get close enough to me." Appellant took the stand and testified in his own behalf. Some of his statements vary somewhat materially as to the beginning of the difficulty from the testimony of the witness V. A. Nalley. He corroborates the State's witness to the effect that he (appellant) did not shoot nor attempt to shoot; that he went in the house, got his pistol and followed his uncle for a block or two with a view, if he could catch up with him, to make him return the deed he had obtained from Necher Nalley, the brother of appellant. This is in substance the case. Upon what theory appellant was convicted of assault to murder, under this testimony, we are at a loss to conjecture. The State's evidence was that appellant got his pistol and followed V. A. Nalley for a block or two with his pistol in his hand, stating that he would kill him. He did not undertake to use the pistol; he did not shoot at him; he did not present it on him; he did not snap the pistol. They were from sixty to seventy yards apart.

The former affirmance is set aside, the rehearing is granted, and for want of sufficient evidence to justify a conviction, the judgment is reversed and the cause remanded.          *Reversed and remanded.* ·

HENDERSON, JUDGE.—I agree to the result—if it be conceded that appellant got within carrying distance of prosecutor, as he fol-

lowed him with the pistol; there is no evidence that he presented same at prosecutor, or that he made any demonstration with the pistol as if to shoot.