Will Young and Tom Longwood v. State.

No. 2139.    Decided December 11, 1912.

1.—Assault to Murder—Charge of Court—Aggravated Assault—Intent to Kill.

Where, upon trial of assault to murder, the court in his charge limited the jury in their consideration of aggravated assault to the theory that had the assault resulted in a killing, and it would have been manslaughter, then the jury would be justified in returning a verdict for aggravated assault, without instructing them upon the question of serious bodily injury and circumstances not amounting to an intent to murder or maim, the same was reversible error.

2.—Same—Rule Stated—Intent to Kill—Malice.

In order to constitute the offense of assault with intent to murder, there must be an assault, and there must be a specific intent to kill actuated by malice. Following Henderson v. State, 55 Texas Crim. Rep., 15.

3.—Same—Charge of Court—Weight of Evidence.

Where, upon trial of assault to murder against two defendants, the charge of the court assumed a state of facts that at least one of the defendants was in the wrong, and did not put the matter in the alternative, the matters of fact being in dispute, there was reversible error. Following Ponton v. State, 35 Texas Crim. Rep., 597, and other cases.

Appeal from the District Court of Jasper.    Tried below before the Hon. W. B. Powell.

Appeal from a conviction of assault with intent to murder; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*J. J. Lee,* for appellant.—On question of court's charge on aggravated assault: Henderson v. State, 55 Texas Crim. Rep., 15; Mundine v. State, 37 id, 5.

On question of court's charge in assuming certain facts: Stuckey v. State, 7 Texas Crim. App., 174; Webb v. State, 8 id, 115, and cases ·ited in opinion.

*C. E. Lane,* Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—This conviction was for assault to murder. Young was given fifteen years, and his codefendant, Tom Longwood, was given two years.

On the 16th day of March, this year, appellants while en route from the town of Remlig to Browndell carried with them in a hand grip some whisky, which Young had received at the express office. Between the two places they met prosecuting witness Oakes and his companion by the name of Alvis. Oakes asked for whisky and finally a sale was made to him of a pint of whisky. There is testimony tending to show that Oakes attempted to arrest appellants, and that he undertook to draw a pistol. Appellant Young drew a pistol and fired at Oakes two or three times, one shot taking effect in his arm. The testimony is seriously in conflict as to whether Oakes was shot at after he was disarmed. He was disarmed during the trouble. The testimony is widely variant in regard to the circumstances attending the difficulty. The testimony of Alvis, who was with Oakes, is about as follows: "Mr. Oakes bought a pint from them (meaning whisky) I did not know the fellow that came along. Mr. Oakes had a $5 bill and got the change from that man. (This seems to have been a passing white man who was not, however, used as a witness in the case.) Mr. Oakes said 'You go on with us,' and Will Young got his pistol from under his overalls." Oakes denied this testimony of Alvis. He remarked that we would all go together, and defendant's testimony is to the effect that Oakes reached for his pistol and said hold up, and Alvis jerked his pistol and fired one shot, striking Longwood in the hip or leg; Longwood was shot by somebody. The State's contention was that the ball that struck the arm of Oakes also struck Longwood. Young's testimony is to the effect that he thought he was being held up by somebody, and he did not know but they were going to rob him at the time Oakes reached for his pistol, and Alvis pulled his and fired. Alvis denied having any pistol. The testimony further shows as soon as the firing began Alvis ran in one direction and Longwood in the opposite direction. The testimony is also directly in conflict as to how Longwood obtained the pistol that belonged to Oakes. The defendants testimony is that Oakes when struck in the arm dropped his pistol, and when Longwood came back Young told him to pick it up and they would not return it to Oakes for fear he might raise further trouble with them, or shoot them, and the pistol was given to some-

body else and finally returned to Oakes. Oakes' testimony is to the effect that he did not draw his pistol, and after Longwood returned to the scene of the trouble after his flight that appellant Young made him get the pistol from off Oakes' person. Appellant Young testified he did not intend to kill Oakes; that he could have done so with ease, especially after Oakes' pistol had dropped. The parties were only a few feet apart. Oakes' testimony indicates Young did intend to kill him. It is unnecessary to go into a detailed statement of the testimony. It may be generally stated that it is as seriously in conflict as testimony well could be. The defendants say that they did not know that Oakes was an officer, and state further if they had known he was an officer they never would have exhibited their whisky, and especially would not have sold any.

There are two propositions submitted for revision, first, the court failed to submit to the jury all the phases of aggravated assault made by the testimony, and practically directed the jury that unless the minds of appellants at the time of the assault were incapable of cool reflection they would be guilty of an assault with intent to murder even though there was no specific intent to kill said Oakes by them; second, that the charge of the court was upon the weight of the evidence in many places, and assumed in several portions of the charge that defendants or one of them had an unlawful intent and that an offense had been committed by them, and was, therefore, prejudicial to them. The court in his charge limited the jury in their considera-tion of aggravated assault to the theory that had the assault resulted in a killing, and it would have been manslaughter, then the jury would be justified in returning an aggravated assault verdict in view of the fact that no killing occurred. It is contended that this charge is en-tirely too restrictive, and that the jury should have been further instructed that it would have been an aggravated assault when serious bodily injury is inflicted upon the person assaulted, and when committed with a deadly weapon under circumstances not amounting to an intent to murder or maim. We are of opinion that the contention of appellant is correct. If there was no intent to kill, but simply by shooting at him to frighten him or even to inflict injury upon him without killing, then the assault would be of no higher grade than aggravated assault. In order to constitute the offense of assault with intent to murder there must be an assault, and there must be a specific intent to kill, and this must be actuated by malice. There are many cases that arise and can arise where there was a specific intent to kill and yet the assault would not be an assault with intent to murder where the killing did not occur. There must always be, however, the specific intent to kill in any event in order to constitute an assault with intent to murder. This question was fully discussed by Judge Ramsey in Henderson v. State, 55 Texas Crim. Rep., 15. That case is quite similar to this in the main contention. The judgment in that case was reversed upon the grounds urged here for reversal. The

court should have given in charge to the jury the law of aggravated assault here contended for by appellants.

The charge of the court, we think, is subject to the criticism that it is on the weight of the evidence. To make this clear the following portion of the charge is quoted:

"When one offense is actually committed by one or more persons, and others are present and knowing the unlawful intent, aid by acts or encourage by words or gestures those actually engaged in the commission of the unlawful act are principal offenders and may be prosecuted and convicted as such.

"The mere presence of Tom Longwood at the place where the shooting took place does not make him a principal, he must not only have been there but must have known of the intent of his codefendant to assault J. M. Oakes, and so knowing such unlawful intent aided by acts or encouraged by words, gestures the said Will Young in the commission of the offense.

"No act done by Tom Longwood after all the shooting was over, however reprehensible it may have been, can make him a principal offender. His action or words in reference to the offense must have all been committed and said before the assault was made. If after the first shots were made by Will Young, the said Tom Longwood came back and held a pistol on said Oakes, while his codefendant, Will Young, shot or shot at him again, if he did do so such would make him, the said Longwood, a principal offender from such time.

"But if the shooting occurred between codefendant Will Young and said Oakes and he, said Longwood, knew nothing of the unlawful intent, and did not participate in the difficulty until after the shooting was over, he would not be a principal and you cannot convict him in this case."

It will be noticed that the charge assumed a state of facts as if these parties were in the wrong, and especially the defendant Young. It may be stated as a fact that there was no question that Young fired two or three times. The State contends he fired four or five times This is denied by defendants' witnesses, they stating that he only fired twice, and that after Oakes was disarmed he fired no more. The charge here assumes, or at least apparently assumes the fact that defendants were in the wrong, and especially Young from the beginning and were the assaulting parties. The charge does not put it in the alternative, but assumes that Young was doing these things, and in such manner as to indicate that he was in the wrong. It is the rule in Texas under our statute that the charge must be so framed as not to assume facts against the defendant where the issues are in dispute. The jury is to decide those matters, and the charge must be so framed as not to invade the province of the jury. See Ponton v. State, 35 Texas Crim. Rep., 597; Bradford v. State, 25 Texas Crim. App., 723 Searcy v. State, 1 Texas Crim. App., 440; Art. 715, White's Ann. Code of Crim. Procedure. To illustrate, the court charged the jury that the

mere presence of Longwood would not make him a principal; he must have known of the intent of Young to assault Oakes, and so knowing such unlawful intent encouraged said Young in the commission of the offense. This charge assumed a material fact in the case, or one of the material facts, and that was that Young had an intent and an unlawful one, and further that such unlawful intent was to assault Oakes, and the further material fact that Young had committed an offense. Upon another trial the charge in these respects will be given so as to avoid being upon the weight of the evidence.

The judgment is reversed and the cause is remanded.

*Reversed and remanded.*