## JOHN HONEA V. THE STATE.

No. 9248. Delivered November 4, 1925.

Rehearing denied March 3, 1926.

### 1.—Murder—Misconduct of Jury—Not Established.

Where appellant on his motion for a new trial sets out as ground therefor the purported misconduct of the jury in receiving other evidence, after their retirement, in that a juror stated to other jurors that he knew appellant's witness Fitzhugh and that he was unworthy of belief. Having heard the testimony of all the jurors on the issue and the testimony being conflicting, the decision of the trial court cannot be disturbed. A mere casual mention of an improper matter in a jury room is not a proper ground for a new trial.

### 2.—Same—New Trial—Properly Refused.

Where appellant as a ground for a new trial complains of a communication to the jury in his absence by the court that he would hold the jury together until Saturday night unless they sooner reached a verdict. Appellant wholly failed to prove that any such thing occurred and his complaint is without merit, and no error is presented.

### 3.—Same—New Trial—Newly Discovered Testimony—Properly Refused.

In his motion for a new trial, appellant sets out the newly-discovered testimony of witness Bertha Hammonds, by whom he expected to contradict the testimony of the witness Shelton, as to appellant's having been in the Hotel Westbrook for an hour prior to the homicide. It is well settled in this state that to entitle the defendant to a new trial upon the ground of newly-discovered testimony, the testimony must be such as would likely change the result, if produced on another trial. We do not think that it can be seriously contended that this newly discovered testimony would have been likely to change the result in the event of another trial, and there was no error in refusing the motion.

### 4.—Same—Evidence—Irrelevant—Properly Excluded.

Where certain instruments in writing in the nature of unsigned affidavits of third parties were offered in evidence by the appellant, and it was not apparent that such writings, which related to a will contest, had any relevancy to the homicide, or in any legitimate manner elucidated any issue raised by the evidence, the court properly excluded such affidavits.

**5.—Same—Evidence—Rejection Of—Harmless, if Error.**

Where the appellant was permitted to prove a conversation between witness and deceased, in which the animosity of deceased toward appellant was clearly manifested, it was harmless, if error, to refuse to permit said witness to testify that this conversation occurred in a room in the Westbrook Hotel, in which he had found deceased in a compromising position with a woman. It is the general rule in this State that it is not ordinarily permissible to prove the details of isolated, collateral transactions.

**6.—Same—Evidence—Properly Admitted.**

The state was permitted to show by a witness that he was with the deceased about nine hours before the homicide and that at that time the deceased did not have any weapon. It is permissible for the State to show that a deceased party is unarmed at the time of the homicide, and this may be shown by circumstantial as well as by direct evidence. The objection to this testimony would go to its weight rather than to its admissibility, and no error is shown in admitting it.

**7.—Same—Charge of Court—Held, Correct.**

Where on a trial of a homicide case no issue of provoking a difficulty being raised, and the court having given appellant an unrestricted charge on self-defense, there was no error in refusing to charge on his right to go armed. Following Harrelson v. State, 60 Tex. Crim. Rep. 539 and other cases cited. Also see Branch's P. C. Sec. 1450 for collation of authorities.

ON REHEARING.

**7.—Same—Evidence—Properly Excluded.**

On rehearing appellant insists that the trial court erred in rejecting testimony offered by him, bearing on the intent, acts and conduct of himself. His bill of exception presenting the matter covers seventeen typewritten pages. Appellant's evidence given on direct, cross, redirect and recross-examination covers more than sixty pages of typewritten matter, and a close analysis of this mass of testimony finds us unable to discover any difference on material points between the testimony so given and that proposed, as shown by his bill, and the motion for rehearing is overruled.

Appeal from the Criminal District Court of Tarrant County. Tried below before the Hon. Geo. E. Hosey, Judge.

Appeal from a conviction of murder, penalty seven years in the penitentiary.

The opinion states the case.

*Baskin, Eastus & Greines* of Fort Worth, for appellant.

*R. K. Hanger,* District Attorney; *W. H. Tolbert,* Assistant District Attorney; *Dayton Moses* of Fort Worth; *Sam D. Stinson,* State's Attorney, and *Nat Gentry, Jr.,* Assistant State's Attorney, for the State.

BERRY, JUDGE.—The appellant was convicted in the District Court of Tarrant County for the offense of murder and his punishment assessed at confinement in the penitentiary for a term of seven years.

The state's testimony shows that appellant shot and killed deceased in the lobby of the Westbrook Hotel just as deceased came from the dining room where he had just finished and paid for his dinner. That he had a newspaper in his left hand and a walking cane in his right hand. It is also sufficient to show that deceased was not armed at the time he was killed. Appellant used a pistol, firing three shots, one shot took effect in deceased's left temple, making its exit below the right ear; another shot struck him in the left side to the right of and about two inches below the heart, and came out two inches to the right of the spine. Appellant testified in his own behalf to communicated threats and to a demonstration by the deceased at the time of the killing showing a present intention to execute such threats. Appellant was corroborated by other witnesses as to the threats, their communication to him and as to very bitter feeling of deceased toward him.

Bill of exceptions No. 2 complains because the court refused appellant a new trial. The ground of this complaint being that the jury received other evidence outside of the presence and hearing of the defendant than that produced on the trial of the case. The substance of this complaint is that one of the jurors stated while considering their verdict that he knew W. B. Fitzhugh, a witness for defendant, and that the said Fitzhugh was unworthy of belief and the jury ought not to believe his evidence in this case. On this question the court heard the testimony of practically all of the jurors when considering appellant's motion for a new trial.. The juror Wadlington testified as follows on this issue:

"I heard a juror make a statement with reference to the witness Fitzhugh who testified as a witness for the defendant in this case, but I don't remember what juror made the statement. He made the remark that he wouldn't believe what Fitzhugh said and that is all he said except he did say he had known him a right smart while and wouldn't believe him."

The testimony of this juror states the matter as strongly perhaps in favor of the appellant's contention as does that of any other juror. Only three or four jurors testified that any such reference was made to Fitzhugh. They each agree that no discussion of the matter was indulged in and none claim

that any more than the one passing reference was made to the matter. One juror testified on being called by the state, giving this version of the matter:

"The way I heard it relative to Mr. Fitzhugh, I heard the question mentioned in the jury room about Mr. Fitzhugh and somebody didn't believe his evidence or something like that. I never heard it stated in the jury room by anyone that they didn't believe him from knowing him further back or anything like that."

We think it clear from the above statement that a sharp issue of fact developed from the testimony of the jurors themselves as to the nature and scope of the statement complained of. It is manifest from the record that no more than a mere casual passing statement was made concerning the matter in any way. The testimony of the jurors clearly raised the issue that if any statement was made it pertained purely to the juror's estimate of the value of Fitzhugh's testimony given in the instant case. This, of course, was a legitimate subject for discussion. The trial court heard this conflicting testimony and his finding thereon is tantamount to his declaration that in his opinion the matter did not happen as the defendant claims and this finding having support in the evidence, will not be disturbed. In addition to what has been said, it is proper to say that a mere casual mention of an improper matter in a jury room is not a proper ground for a new trial. Gutierrez v. State, 272 S. W. 780, and cases there cited.

By bill of exceptions No. 1, appellant complains because the court did not grant him a new trial for the reason that appellant alleges that after the jury were hopelessly deadlocked, and the court had been so informed, the court outside the hearing and presence of the defendant sent a communication to the jury to the effect that he would keep them together until midnight Saturday or for the balance of the week, before he would discharge them, unless they would sooner agree upon a verdict in the case. The appellant contends that this statement coerced the jury into returning a verdict of guilty. This complaint is without merit; the testimony heard by the trial court on the motion for a new trial concerning this matter utterly fails to develop the fact that the court sent any such communication to the jury. We think it not incorrect to say that the great preponderance of the evidence shows that the jury were not advised of any such communication from the court and the evidence wholly fails to show that any such communication by

the court to the jury was actually made. The most that the appellant can contend that the testimony on this issue shows is that some of the jurors testified that they had a vague recollection that something was said concerning this matter or that someone said something about their being forced to stay together until Saturday night in the absence of a verdict. As above stated, no juror testifies that any such communication was carried to them from the court and in the absence of some showing to this effect, the matter does not present error.

By his 3rd bill of exceptions appellant complains because the court refused to grant a new trial based on his allegation that he was entitled to the newly-discovered testimony of the witness Bertha Hammonds. On the trial of the case the witness Addie Shelton testified that she was on duty working for the telephone company at the Westbrook Hotel pay station at the time of the killing and that the appellant had been sitting in the lobby of the hotel about an hour prior to the time of the shooting. By the witness Mrs. Hammonds, the appellant claims that he could rebut this testimony of the witness Shelton, appellant claiming and the affidavit of Mrs. Hammond showing that she would testify that she was employed at the Westbrook Hotel on the day of the killing and that about 8:15 o'clock P. M. she saw the defendant John Honea accompanied by his wife, walk past the witness at Third and Main Streets in the City of Fort Worth. It is appellant's contention that the killing occurred at 8:30 o'clock on this night and he contends that this testimony of this newly-discovered witness would therefore contradict the witness Shelton to the effect that he had been in the hotel lobby an hour before the killing occurred. We think the court was not in error in refusing a new trial on account of this matter. In the first place, the record discloses that no witness testified definitely and positively that the killing occurred at the exact hour of 8:30 o'clock, and neither is the testimony of the absent witness definite and positive to the effect that she saw the appellant away from the hotel at 8:15 o'clock; neither is the testimony of the witness Shelton positive to the effect that he was in the hotel lobby an hour before the killing. In every instance the witnesses give their opinion as to the time of day and in every instance they state it as on or about a certain hour. It is well settled in this state that to entitle the defendant to a new trial upon the ground of newly-discovered testimony, the testimony must be such as would likely change the result if produced upon another trial. Sec.

201, Branch's Ann. P. C. for collation of authorities. We think it clear from a bare statement of the facts above detailed that it cannot be seriously insisted that this newly-discovered testimony would have been likely to change the result had it been offered on the trial of the case, nor would it be likely to change the result in the event of another trial.

We are also satisfied that the diligence shown to determine what this witness knew concerning the case is not sufficient. Appellant admits that he was well acquainted with this absent witness, that he lived at the hotel himself; that he knew she was employed there and knew about what time she left her employment. The record further shows that he discussed the killing with this witness before the trial and that he asked her nothing further concerning the facts after she told him that she did not see the killing and knew nothing about it. The testimony of Addie Shelton which is sought to be contradicted by the witness Hammonds, was of course, given before the trial had concluded and appellant makes no showing that he made any effort to further interrogate the witness Hammonds as to her knowledge of the length of time he had been in the hotel before the killing occurred. It is also true that appellant admitted in his testimony on the motion for a new trial that there were other parties working in the hotel at the time with whom he was well acquainted and none of these parties were called for the purpose of attempting to contradict the testimony of the witness Shelton. Under these conditions, we think it clear that appellant is not shown to have been injured in any material right by the court's action in refusing him a new trial on account of the alleged newly-discovered testimony.

By bill of exceptions No. 4 appellant complains because the court refused to permit him to introduce a certain unsigned affidavit and an unsigned contract as testimony in the case. Appellant testified in the trial that he was a witness in the trial of the Jackson will case in Tarrant County, and that he testified in that case that he was present and saw the marriage ceremony performed between John L. Jackson and Mrs. Sarah Vestal. He further testified that later on in the spring of 1922, he wrote a letter in regard to the testimony he had given in the trial of that case and that this letter was addressed to the deceased and delivered to the deceased and in that letter he repudiated the testimony he had given as to seeing the marriage above mentioned and stated that he was thoroughly convinced that the marriage that was supposed to have taken place was

not in fact consummated, and in the strongest manner possible repudiated the testimony he had given in that trial. In addition to this he identified an affidavit that he had made and delivered to the deceased showing that the testimony he had given in the will case was false and declaring that he desired to repudiate the same in order that justice might be done in the matter. The letter above referred to was written on the 22nd day of April, 1922, and the affidavit was signed on the 11th day of May, 1922. Appellant claims that if he had been permitted to do so he would have explained the fact that he had repudiated his testimony in the will case by the introduction in evidence of a contract between the deceased and one Atwood wherein the deceased as attorney for the National Spiritualist Association of the United States of America, agreed to give Atwood one-fourth of said association's interest in the property alleged to belong to them under the Jackson will, in consideration that the said Atwood would produce testimony to prove that the evidence offered when the will was probated was false and perjured. For this same purpose the appellant offered an unsigned affidavit wherein it is sought to have Laura Lane repudiate testimony given in said will case and an unsigned affidavit wherein it is sought to have another witness in said will case repudiate her testimony. The contract above referred to was dated May 3, 1923, and one of the affidavits was dated the blank day of November 1923 and the other the blank day of October 1923. Just how the introduction of these blank affidavits and this unsigned contract could have in any manner influenced or explained appellant's conduct in signing the letter and affidavit written and made by him more than a year before either the contract or the other affidavits were ever written is not apparent. We think the trial court was clearly correct in refusing to permit the introduction of these papers. They had no connection so far as this record shows with the letter and affidavit signed by this appellant. They do not come within Art. 111, Vernon's C. C. P., because they were not letters and papers between the same parties and there was no connection between them in point of time. The affidavits to be signed by the other parties were dated a year and a half after the one signed by the appellant and the blank contract offered was dated more than a year after said affidavit and letter were written by the appellant. We repeat that these matters had no bearing on or connection with the writing introduced in evi-

dence between appellant and the deceased and their exclusion was not erroneous.

By bill of exception No. 5 appellant complains because the court refused to permit him to prove by the house detective at the Westbrook Hotel that he raided the room of the deceased on one occasion and found a woman in the room with deceased and that there was also a bed in the room where the deceased and said woman were, and that the woman was seated on said bed and that she had a bottle in her hand partly filled with something the witness took to be whiskey and that the witness told the woman to leave the room and the hotel; and that about the time she was leaving the room the deceased said to witness in an angry manner, "I guess this is some of Honea's doings." It is proper to state that this witness was permitted to testify that while the deceased was staying at the hotel, that the witness went to his room and opened the door to his room and while in the room the deceased said "I guess this is some of Honea's doings; in other words, the only portion of the witness' testimony excluded by the court was that portion wherein the witness would have testified that he found a woman in deceased's room. The only purpose for which this testimony could have been legitimately offered was to show ill feeling between the deceased and the appellant, and we think it clear from the record that this fact was established by the testimony beyond any controversy. The appellant and his witnesses all testified to such ill feeling on the part of deceased toward appellant and this matter was in no wise controverted by the state. We are cited by appellant to the recent case of Wellborne v. State, 271 S. W. 606. But in that case the statement is clearly made "that in a criminal case where appellant relies upon any character of defense that is not definitely and clearly established by the evidence, then any fact or circumstance which renders probably true the appellant's defense is admissible." Applying the doctrine there announced to the facts in the instant case, we think it clear that the character of defense that appellant was seeking to show by this witness was the ill feeling of the deceased toward him and therefore the likelihood that deceased would attack him. This was a legitimate and proper defense but as above indicated we think that it does not come within the rule laid down in the Wellborne case, because in the instant case this particular defense was in fact clearly and definitely established by the evidence and if the court was in error in excluding the testimony complained of, its

exclusion was not of such a harmful nature as would require a reversal of this case.

We think the testimony was not admissible for another reason. Under the well known rule in this state, it is ordinarily not permissible to prove the details of isolated collateral transactions, and in view of the fact that the court permitted proof to go in on the actual fact of a harsh remark made at the time in question by the deceased against the appellant, we think that this sufficiently protected every right appellant had in the matter and rendered it incompetent and unnecessary for the appellant to show the minute details of the conversation between the deceased and the house detective of the Westbrook Hotel.

By bill of exception No. 6, appellant complains because the court permitted a witness to testify for the state that he was present with the deceased in his room at 11 o'clock A. M. on the day of the killing and that the deceased at that time so far as the witness could see did not have any weapon. It is appellant's contention that this is a matter occurring outside the presence and hearing of the defendant and was therefore testimony relative to a matter of which appellant had no knowledge and could not be bound. We think this complaint is without merit. It is permissible for the state to show that a deceased party is unarmed at the time of the homicide, and this may be shown by circumstances as well as by direct testimony. It is true that this testimony pertained to a time some nine hours before the killing, but the objection to it would go to its weight rather than to its admissibility.

By defendant's bill of exception No. 8, complaint is made because the court failed to charge the jury that when a person has been threatened with death or serious bodily injury by another, that he then under the law has the right to arm himself for the purpose of protecting himself against the person threatening to take his life or do him such injury and further failed to charge or instruct the jury that if they find and believe from the evidence that the deceased had made threats to take the life of the defendant, or to inflict serious bodily injury upon his person that then the defendant has the right under the law to arm himself for the purpose of defending himself. In this case, the court did not in any manner limit the defendant's right of self-defense by a charge on provoking the difficulty but gave him an unrestricted charge on self-defense and it was therefore not error to refuse to charge on his right to go

armed. Harrelson v. State, 60 Tex. Crim. Rep. 539, 132 S. W. 738; Holmes v. State, 155 S. W., 205; Strickland v. State, 161 S. W. 110. Also see Sec. 1450 Branch's P. C. for collation of authorities.

This disposes of the complaints urged by appellant and finding no error in the record, it is our opinion that the judgment should be in all things affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the udges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

HAWKINS, JUDGE.—In his motion for rehearing appellant's only complaint is that in discussing his bill of exception number four we failed to take note of many things which the bill recites appellant would have testified to if permitted tending to show his good faith in writing the letter and making the affidavit wherein he repudiated his testimony given in the "Jackson will case," and which was explanatory of said letter and affidavit. It is further contended that the proposed testimony was admissible to show good faith in his subsequent conduct and belief that deceased had ensnared him into making said affidavit, and as bearing on the intent, acts and conduct of appellant.

The bill of exception under consideration covers seventeen typewritten pages and it would be impracticable within reasonable limits to set out in this opinion the proposed testimony. We have been at much pains and labor to analyze and compare it with appellant's evidence found in the statement of facts which covers more than sixty pages. After a close examination of the evidence given by appellant on direct, cross, re-direct and re-cross examination we confess our inability to discover any difference on material points between the testimony so given and that proposed as shown by the bill. It would have been a repetition of evidence on a subject which appears to have been fully covered by appellant in his examination before the jury. This being true it is manifest that the bill presents no error calling for a reversal.

The motion for rehearing is overruled.

*Overruled.*