**Larry D. ROBINSON, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 04–81–00077–CR.**

Court of Appeals of Texas, San Antonio.

Feb. 17, 1982.

Discretionary Review Refused May 19, 1982.

Samuel H. Bayless, San Antonio, for appellant.

Bill White, Dist. Atty., Linda S. McDonald, Asst. Dist. Atty., San Antonio, for appellee.

Before ESQUIVEL, BUTTS and CANTU, JJ.

## OPINION

CANTU, Justice.

Appellant was convicted of attempted murder by a jury and punishment was thereafter assessed at five (5) years' confinement in the Texas Department of Corrections.

In an ably written brief appellant complains of error in eighteen (18) particulars but does not challenge the sufficiency of the evidence. A proper addressing of some of the assigned error requires discussion of the facts in the case.

The evidence viewed in the light most favorable to the verdict reflects that on the early evening of June 15, 1978, appellant visited the house of his former girlfriend Lucinda Davis, located at 2146 Aransas Street in San Antonio, Bexar County, for the purpose of effectuating a reconciliation. Appellant returned to his own apartment to collect his personal effects and to inform his current girlfriend, Deborah Nious that he, appellant, would be reconciling with Lucinda Davis.

Lucinda Davis, who in the meantime had been living with Deborah Nious' ex-husband, Arthur Nious, learned that appellant had lied to her about his relationship with Deborah Nious and became upset. Upon appellant's return to Miss Davis' house a violent argument ensued between appellant and Lucinda Davis resulting in injuries being inflicted upon Miss Davis. Lucinda Davis' parents, Leroy and Catherine Davis, came over from their next-door residence to calm appellant and Lucinda.

Between appellant's first and second trips to Lucinda's house, Lucinda telephoned Arthur Nious, with whom she had been living since her separation from appellant, to tell him about the problem. Arthur Nious arrived at Lucinda's residence, parked his car in the driveway of Lucinda's parents' residence and stood in the driveway until Lucinda went out to meet him. Together they returned to her home and when Arthur Nious reached the front door appellant moved back and away from the door.

An argument immediately began between appellant, Catherine Davis and Arthur Nious concerning how the two couples were to be paired. Arthur Nious then challenged appellant to step out and engage in a fight as he (Nious) stood leaning against the front door.

Instantly, and without warning, appellant reached into his back pocket, pulled out his .22 caliber automatic pistol and began firing at Arthur Nious inside the house. As Arthur Nious ran out the door, appellant followed in hot pursuit, jumped on top of his car and continued to fire at Nious until the pistol was emptied. Nious ran through some hedges and in the direction of Martin Luther King Drive.

A single shot from some other weapon was heard and appellant ducked for cover. Appellant then reached into his car, reloaded his pistol and was heard to say, "I finally got his ass." Appellant then got into his car and drove away. Ten minutes later appellant called Lucinda Davis to find out if Arthur Nious had been found between Lucinda's house and the neighbor's house.

Arthur Nious subsequently was discovered in a pool of blood on the porch of 2815 Martin Luther King Drive, the next street over from the Davis residence. Nious sustained critical injuries to his neck and chest with resulting paralysis, speech impediment and memory loss.

Catherine Davis corroborated the testimony of Lucinda Davis in every particular. Arthur Nious was unable to remember when he was shot or by whom. His testimony was punctuated by instances of memory loss.

Appellant testifying in his own behalf, related similar facts happening prior to the shooting incident. According to his story, Arthur Nious arrived at the Davis residence wearing a T-shirt with the butt of a pistol outlined under the shirt. After the challenge to fight was made, Arthur Nious ran out of the house with appellant in pursuit. When appellant reached the porch he saw Nious hiding behind the front of appellant's car and appellant, believing Nious to have a gun, drew his pistol and fired at Nious. Nious moved to the driver's side of the car and appellant believing Nious was about to shoot him, jumped on top of his car and fired a second shot at Nious. Nious moved to the rear of the car and appellant fired off the third shot. Nious fled through the hedges toward a neighbor's house and as he momentarily hesitated appellant fired off a fourth shot.

According to appellant, as he approached the hedges searching for Nious' whereabouts two shots were fired at him. Appellant then got into his car and drove away.

Appellant denied reloading his pistol and denied any exchange of words with Nious during the shootout. Appellant predicated his right to shoot at Nious on his belief that Nious would have shot him first and insisted that he acted solely in self-defense.

Several officers testified as to their role in the investigation and their recovery of a bloody hat belonging to Nious, a .22 caliber revolver and a single long .22 caliber live round found on the porch of the house at 2815 Martin Luther King Drive.

In his first ground of error appellant asserts that the trial court committed fundamental error in its charge, in that the charge authorized the jury to convict upon a lesser culpable mental state than is prescribed by the statute creating the offense.

The indictment, formal parts omitted, alleges:

Larry D. Robinson did then and there intentionally and knowingly attempt to cause the death of Arthur Nious by shooting the said Arthur Nious with a gun, an act amounting to more than mere preparation that tended but failed to effect the commission of the offense of murder . . . .

The charge of the court on guilt or innocence provided, *inter alia* the following definitions and application of the law to the facts.

A person attempts to commit an offense if, with specific intent to commit an offense, he does an act amounting to more than mere preparation that tends, but fails, to effect the commission of the offense intended.

A person commits the offense of attempted murder if he intentionally or knowingly attempts to cause the death of an individual.

\* \* \* \* \* \*

Therefore, if you believe from the evidence beyond a reasonable doubt that the defendant, Larry D. Robinson, did, in Bexar County, Texas, on or about June 15th, 1978, *intentionally or knowingly attempt* to cause the death of an individual, to wit: Arthur Nious, *by shooting the said* Arthur Nious with a gun, you will find the defendant Guilty.

If you do not so believe, or if you have a reasonable doubt thereof, you will find the defendant not guilty. (Emphasis supplied.)

Appellant argues that Tex.Penal Code Ann. § 15.01 (Vernon Supp. 1980–1981),[1] addressing criminal attempts, permits an act to become a criminal attempt only if the act is done with the *specific intent* to commit the offense intended and that since Tex.Penal Code Ann. § 6.03 (Vernon 1974)[2] defines *intentionally* and *with intent* synonymously, a person acting *intentionally* necessarily acts *with intent*, the same culpable mental state. Appellant, therefore, reasons that the charge to the jury permitted a conviction upon a lesser culpable mental state[3] than that required by § 15.01, since it permitted the jury to convict of attempted murder if they found that appellant *intentionally or knowingly* attempted to cause the death, etc.

Appellant insists that the portion of the court's charge applying the law to the facts is fundamentally defective because it permits a conviction upon the finding of a knowing act, a lesser culpable mental state than is prescribed by the statute creating the offense of "criminal attempt." Appellant further contends that the criminal attempt statute can apply only to an offense which can be committed intentionally and by applying it to a crime capable of commission under a knowing culpable mental state, the statute improperly permits a conviction without proof of an essential element. Without benefit of specific authority, appellant relies generally upon a line of cases holding that a charge which permits the jury to convict without a finding of the existence of all essential elements of the offense beyond a reasonable doubt constitutes fundamental error. *See Cumbie v. State,* 578 S.W.2d 732 (Tex.Cr.App.1979); *Jackson v. State,* 576 S.W.2d 88 (Tex.Cr.App.1979); *Dowden v. State,* 537 S.W.2d 5 (Tex.Cr.App.1976). We are impressed but not persuaded by appellant's interpretation and manipulation of the law.

The charge to the jury requires a finding of an attempt [as defined] by appellant to cause the death of a specified individual in addition to a finding that the attempt was knowingly or intentionally made in order to justify a conviction. Because the word "attempt" is sufficient to include the word "intent" and in fact is more comprehensive in meaning[4] the jury was necessarily required to find that criminal attempt was committed with specific intent regardless of whether it found the attempt to be intentionally or knowingly made.

Attempt implies an intent and an active effort to carry out or consummate the intent or purpose. *Ex parte Pousson,* 599 S.W.2d 820 (Tex.Cr.App.1980); *Dovalina v. State,* 564 S.W.2d 378 (Tex.Cr.App.1978). *See* comprehensive discussion in *Shipp v. State,* 81 Tex.Cr.R. 328, 196 S.W. 840 (1917).

---

**1.** Section 15.01 provides in relevant part:

(2) A person commits an offense if, with specific intent to commit an offense, he does an act amounting to more than mere preparation that tends but fails to effect the commission of the offense intended.

**2.** Section 6.03 provides in relevant part:

(a) A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result.

**3.** Tex.Penal Code Ann. § 6.02 (Vernon 1974) provides in subsection (d):

(d) Culpable mental states are classified according to relative degree from highest to lowest, as follows:

(1) intentional;
(2) knowing;
(3) reckless;
(4) criminal negligence

**4.** *See Whitlow v. State,* 609 S.W.2d 808 (Tex.Cr.App.1980); *Smith v. State,* 571 S.W.2d 168 (Tex.Cr.App.1978); *Telfair v. State,* 565 S.W.2d 522 (Tex.Cr.App.1978).

The jury having found that the attempt was with specific intent, it matters not that they also found that the attempt was made knowingly rather than intentionally.

We hold that the finding by the jury that the attempt was either knowingly made or intentionally made is surplusage and that the required culpable mental state is supplied by a finding that the act was performed with the specific intent to commit the offense intended. To require an additional culpable mental state would result in a jury finding that an offense was committed intentionally with specific intent *or* that it was committed knowingly with specific intent.[5] In either case a specific intent would be present and would suffice to supply the requirement of Tex.Penal Code Ann. § 6.02 (Vernon 1974). Appellant's first ground of error is overruled.

In his second ground of error appellant alleges that the trial court committed error in its charge to the jury because the charge which applied the law to the facts failed to require the jury to find that the act alleged in the indictment was an act which amounted to more than mere preparation. Appellant argues that failure to require such a finding permits a conviction on less than all the elements of the offense charged.

Appellant's contentions are without merit when the entire charge is examined, as it must be. Our Court of Criminal Appeals has repeatedly held that a charge must be read as a whole and review of a charge should not be limited to one part standing alone. *Crocker v. State*, 573 S.W.2d 190 (Tex.Cr.App.1978); *Slagle v. State*, 570 S.W.2d 916 (Tex.Cr.App.1978); *Pittman v. State*, 554 S.W.2d 190 (Tex.Cr.App.1977).

In the part of the charge that defines criminal attempt the jury is instructed that:

A person attempts to commit an offense if, with specific intent to commit an offense, *he does an act amounting to more than mere preparation* that tends,

but fails, to effect the commission of the offense intended .... (Emphasis supplied.)

When the foregoing definition is considered with the portion of the charge applying the law to the facts it is clear that the jury was correctly instructed that a conviction could be had only if they found that an attempt was made as defined.

The charge when viewed as a whole correctly required a finding of an attempt as alleged in the indictment and as prescribed by Tex.Penal Code Ann. § 15.01 (Vernon Supp.1981). Appellant's second ground of error is without merit and is overruled.

By his third and fourth grounds of error, appellant complains of the trial court's failure to instruct the jury on the lesser included offense of aggravated assault. He argues that because the indictment alleged attempted murder under Tex. Penal Code Ann. § 19.02(a)(1) (Vernon 1974), which required a specific intent to kill, he was automatically entitled to a submission on aggravated assault. By his own admission, appellant sought to justify his actions on his right to defend himself. The evidence from all sources does not raise the issue of intent to accomplish any act less than the death of Arthur Nious by shooting him with a gun. A proper charge on self-defense was given to the jury, and the trial court would not have been justified in charging on a lesser included offense in the absence of some evidence raising the issue. *Thomas v. State*, 578 S.W.2d 691 (Tex.Cr. App.1979); *Cato v. State*, 534 S.W.2d 135 (Tex.Cr.App.1976).

All of the evidence presented by the State supported a finding that appellant acted with the specific intent to kill necessary for a conviction of attempted murder. All of appellant's evidence supported a finding of justification for his actions and none of it negated the intent to kill. Viewing the evidence in the light most favorable to

---

**5.** See *Cowan v. State*, 562 S.W.2d 236 (Tex.Cr. App.1978) and *see* concurring opinion (Douglas) in *Mott v. State*, 543 S.W.2d 623, 628 (Tex.Cr.App.1976) wherein it was held that

proof of the greater culpable mental state necessarily constitutes proof of the lesser culpable mental state charged. *See also* Tex.Penal Code Ann. § 6.02(e) (Vernon 1974).

the verdict, we find that the jury was authorized to infer a specific intent to kill from the use of a deadly weapon, and particularly by the manner of its use in the instant case.

In *Cato v. State, supra,* the court recognized that in prosecutions under Tex.Penal Code Ann. § 19.02(a)(1) (Vernon 1974), which specifically contains the element of intent to kill, aggravated assault is a lesser included offense. It further recognized that in such prosecutions where the weapon used is not deadly per se, the court should charge on aggravated assault *provided the evidence raises the fact issue of a lack of intent to kill.*

■ In the absence of some evidence that appellant, if guilty, was only guilty of a lesser included offense, no charge on a lesser included offense was required. *Royster v. State,* 622 S.W.2d 442 (Tex.Cr.App.1981); *Eldred v. State,* 578 S.W.2d 721 (Tex.Cr.App.1979); *Williams v. State,* 575 S.W.2d 30 (Tex.Cr.App.1979); *Dovalina v. State,* 564 S.W.2d 378 (Tex.Cr.App.1978); *Day v. State,* 532 S.W.2d 302 (Tex.Cr.App.1975); *McBrayer v. State,* 504 S.W.2d 445 (Tex.Cr.App.1974). Similarly, if the evidence raises only the issue that the accused is guilty of the offense charged or no offense at all, the giving of a lesser included offense charge is not necessary. *Thomas v. State, supra; McBrayer v. State, supra.* Appellant's third and fourth grounds of error are overruled.

Appellant next complains in his grounds of error five through nine of trial court error in excluding certain testimony regarding his reasons for believing that Arthur Nious was carrying a gun on the night in question. A bill of exception was developed outside the presence of the jury. We have examined it and find that appellant sought to offer evidence before the jury that he had been told that Nious habitually carried a gun, that Nious was generally a dangerous man. Appellant argues that because his plea of justification or self-defense turned upon whether or not he had reasonable grounds upon which to fear that he might be in danger of being shot at, he should have been permitted to offer all relevant facts and circumstances going to show the condition of his mind at the time of the offense. *See* Tex.Penal Code Ann. § 19.06 (Vernon 1974).[6]

■ The law is well settled that when a defendant raises the issue of self-defense, he may offer in evidence information he had at the time which might have led him to believe there was a need for self-defense.[7] *Lowe v. State,* 612 S.W.2d 579 (Tex.Cr.App.1981); *Wood v. State,* 486 S.W.2d 359 (Tex.Cr.App.1972); *Ybarra v. State,* 161 Tex.Cr.R. 118, 275 S.W.2d 484 (1955). Before the improper exclusion of evidence can be deemed reversible error, however, an examination of the admitted evidence must be made in order to determine the harm, if any, in the court's ruling.

■ We note in examining the record that most, if not all, of the excluded evidence was already before the jury in substantially the same form. The admitted evidence disclosed that appellant was afraid of Nious and considered him dangerous and that appellant thought Nious would use a gun against him on the night of the offense. The only testimony not allowed before the jury concerned appellant's reference to Nious' prior arrests for carrying a gun. Since no real dispute was made by the State regarding Nious' possession of a gun on the evening in question, appellant's reliance on self-defense was not diminished by the trial court's refusal to permit testimony regarding Nious' arrests for carrying a gun.

---

**6.** That statute provides:

In all prosecutions for murder or voluntary manslaughter, the State or the defendant shall be permitted to offer testimony as to all relevant facts and circumstances surrounding the killing and the previous relationship existing between the accused and the deceased, together with all relevant facts and circumstances going to show the condition of the mind of the accused at the time of the offense.

**7.** The predecessor of § 19.06, *supra,* Article 1257–a [Acts 1927, p. 412, ch. 274, § 2] which read substantially the same, was held applicable to assaultive crimes as well as homicides. *See* Branch's Ann. Penal Code, 2d Edition, Vol. 4, § 2238 and cases collated thereunder.

We note that the State's own witness, in addition to appellant, testified that a shot was fired at appellant from the direction in which Nious had fled. We also note that a gun not attributed to appellant, found in the general vicinity of Nious' path of retreat, was admitted in evidence. We find no harm in the trial court's exclusion of the testimony in view of the cumulative nature of the proffered evidence. *Honea v. State*, 103 Tex.Cr.R. 242, 280 S.W. 819 (1925); *Littleton v. State*, 91 Tex.Cr.R. 205, 239 S.W. 202 (1922). Appellant's grounds of error five through nine are overruled.

Appellant next complains in his grounds of error ten through fourteen of trial court error in admitting into evidence over timely objection, State's exhibits 19, 19A, 19B, 19C and 19D. The complained-of exhibits consisted of the entire medical records of Arthur Nious while he was hospitalized at Brooke Army Medical Center. Objection to their introduction was predicated upon an alleged failure to comply with Tex.Rev.Civ. Stat.Ann. art. 3737e (Vernon Supp.1981).

▉ Later in the trial the State offered State's exhibit 21 which consisted of the same documents comprising the State's exhibits 19, 19A, 19B, 19C and 19D. Appellant thus waived his prior objection by not objecting to the subsequent tender. Nothing is preserved for review. *Sherbert v. State*, 531 S.W.2d 636 (Tex.Cr.App.1976); *Vela v. State*, 516 S.W.2d 176 (Tex.Cr.App.

1974); *Mutscher v. State*, 514 S.W.2d 905 (Tex.Cr.App.1974).

Appellant next complains in his grounds of error fifteen through eighteen of the trial court's failure to instruct the jury on the lesser included offense of "attempted voluntary manslaughter."

Appellant acknowledges that no Texas case exists recognizing attempted voluntary manslaughter as a lesser included offense but argues that logic and reason compel the conclusion that such a charge is appropriate *depending on the evidence*, in a prosecution for attempted murder.

We note at the outset that no evidence was raised that appellant acted under the immediate influence of sudden passion arising from an adequate cause.[8] In fact all of the evidence adduced at the trial indicates that appellant acted deliberately. Appellant by his own testimony claims the only reason he fired was in self-defense because he *thought* Nious would fire at him. Nothing in the record suggests that appellant acted under the requisite degree of anger, rage, resentment or terror giving rise to an adequate cause so as to invoke the sudden passion doctrine of voluntary manslaughter.[9]

Several jurisdictions have wrestled with the question of the existence of such an offense as attempted voluntary manslaughter. Some have declined to recognize such an offense [10] while others have readily accepted its existence.[11] Our Court of Crimi-

---

8. Tex.Penal Code Ann. § 19.04 (Vernon 1974) provides in relevant part:

   (a) A person commits an offense if he causes the death of an individual under circumstances that would constitute murder under section 19.-02 of this Code, except that he caused the death under the immediate influence of sudden passion arising from an adequate cause.

   (b) "Sudden passion" means passion directly caused by and arising out of provocation by the individual killed or another acting with the person killed which passion arises at the time of the offense and is not solely the result of former provocation.

   (c) "Adequate cause" means cause that would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection.

9. *See Luck v. State*, 588 S.W.2d 371 (Tex.Cr. App.1979) holding that a charge on voluntary manslaughter is not required where the evidence only raises the issue of self-defense.

10. *State v. Dahlstrom*, 276 Minn. 301, 150 N.W.2d 53 (1967); *State v. Carter*, 44 Wis.2d 151, 170 N.W.2d 681 (1969); *People v. Brown*, 21 App.Div.2d 738, 249 N.Y.S.2d 922 (1964); [Both *People v. Brown, supra*, and *State v. Carter, supra*, address voluntary manslaughter statutes requiring no intent to kill.] *See also People v. Ross*, 103 Ill.App.2d 430, 243 N.E.2d 697 (1968).

11. *People v. Genes*, 58 Mich.App. 108, 227 N.W.2d 241 (1975); *State v. Harper*, 205 La. 228, 17 So.2d 260 (1944).

nal Appeals in *dictum* has intimated that such an offense is possible.[12]

In *Morgan v. State*, 545 S.W.2d 811 (Tex. Cr.App.1977) appellant was indicted for attempted murder and was found guilty of attempted voluntary manslaughter as a lesser included offense. None of the testimony reported in the opinion revealed that appellant acted "under the immediate influence of sudden passion arising from an adequate cause". It appears, however, that appellant requested numerous charges of the trial court and received all but one, the denial of which formed the basis of his appeal. The opinion, written by Commissioner Brown, makes no reference to the status of attempted voluntary manslaughter as a viable criminal offense because appellant, presumably, requested the charge on the "lesser offense" and was satisfied with a third degree felony conviction. Nothing in the opinion supports a conclusion that the offense exists simply because the accused was satisfied with a conviction on something less than attempted murder.

A denial by the trial court of a charge on attempted voluntary manslaughter would have been proper and a conviction thereon subject to the "invited error doctrine"[13] as well as to waiver by estoppel.[14] We need linger on *Morgan v. State, supra,* no longer than to note that it is not authoritative on the issue before us.

We think, however, that in light of the holdings in *Humphries v. State*, 615 S.W.2d 737 (Tex.Cr.App.1981) and *Braudrick v. State*, 572 S.W.2d 709 (Tex.Cr.App.1978) that voluntary manslaughter arises only as reduced murder[15] by way of defense, that

one cannot have the specific intent to commit reduced murder by intending to raise a defense at the same time. Similar contentions have been dealt with by our courts in discussing predecessor statutes dealing with homicide.[16]

In 1873, our Supreme Court in *Hart v. State*, 38 Tex. 382, held that there was no such offense as assault with intent to commit manslaughter. Earlier, the same court in *White v. State*, 22 Tex. 608 (1858), held that there was no such crime as an attempt to commit an assault with intent to commit murder.

Again in *Hobbs v. State*, 16 Tex.App. 517 (1884), the court held that if an assault is made under sudden passion arising from adequate cause rendering the mind incapable of cool reflection, the offense is aggravated assault, but if death ensues the crime becomes manslaughter.

Stated conversely, an accused would not be guilty of a higher grade of offense than aggravated assault if the proof shows that had death resulted the offense would be manslaughter. *Mays v. State*, 19 S.W. 504 (Tex.Cr.App.1892); *Spivey v. State*, 30 Tex. App. 343, 17 S.W. 546 (1891); *Johnson v. State*, 5 Tex.App. 43 (1878); *Hodges v. State*, 3 Tex.App. 470 (1878). *See also Solis v. State*, 76 Tex.Cr.R. 230, 174 S.W. 343 (1915); *Daniels v. State*, 71 Tex.Cr.R. 662, 160 S.W. 707 (1913); *Brailaford v. State*, 71 Tex.Cr.R. 113, 158 S.W. 541 (1913).

Under the early cases, before the existence of a general criminal attempt statute, the law addressed the concept of assault

**12.** In *Ortiz v. State*, 577 S.W.2d 246 (Tex.Cr. App.1979) the court speaking through Judge Douglas held it was not error to refuse a charge on voluntary manslaughter in a prosecution for attempted murder where the evidence failed to show that defendant was acting under the immediate influence of a sudden passion arising from an adequate cause. We believe the court meant attempted voluntary manslaughter since no death occurred.

**13.** *See dictum* in *Hart v. State*, 581 S.W.2d 675 (Tex.Cr.App.1979); *compare Stiles v. State*, 520 S.W.2d 894, 895 (Tex.Cr.App.1975).

**14.** *See infra*, n. 18.

**15.** Voluntary manslaughter under Tex.Penal Code Ann. § 19.04 occurs as reduced murder only where *death results* under the immediate influence of sudden passion, etc. There is no indication that the legislature intended to apply the reduction to less than a homicide under § 19.02(a)(1) and § 19.02(a)(2).

**16.** We may look to the old law of manslaughter in order to obtain instructive guidance. *Roberts v. State*, 590 S.W.2d 498 (Tex.Cr.App. 1979); *see also McCartney v. State*, 542 S.W.2d 156 (Tex.Cr.App.1976).

with intent to murder. As with our present attempt statute, a specific intent to commit the offense was required, so that an assault with intent to murder required a specific intent to kill. *See Solis v. State, supra; Young v. State,* 68 Tex.Cr.R. 580, 151 S.W. 1046 (1912); *Prescott v. State,* 52 Tex.Cr.R. 35, 105 S.W. 192 (1907); *Nalley v. State,* 51 Tex.Cr.R. 58, 100 S.W. 385 (1907); *Reyes v. State,* 48 Tex.Cr.R. 346, 88 S.W. 245 (1905); *Beard v. State,* 47 Tex.Cr.R. 50, 81 S.W. 33 (1904); *Cage v. State,* 77 S.W. 806 (Tex.Cr. App.1903); *Carter v. State,* 28 Tex.App. 355, 13 S.W. 147 (1890).

As with our present murder and attempt statutes, under prior law, murder could be committed if the intent be to inflict serious bodily injury and death ensued, but a specific intent to kill was required to constitute assault with intent to murder. *See Wesley v. State,* 149 Tex.Cr.R. 650, 198 S.W.2d 103 (1946); *Young v. State, supra; Prescott v. State, supra; Carter v. State, supra.*

■ It was recognized early that an assault is an attempt to do something, as, for example, an intentional attempt to do injury, by violence, to the person of another, or simply, an attempt to commit a battery. *See McCullough v. State,* 24 Tex.App. 128, 5 S.W. 839 (1887); *Johnson v. State,* 43 Tex. 576 (1875); *Smith v. State,* 32 Tex. 593 (1870).

It has likewise been said, in cases involving alleged attempts to murder, that an attempt is not necessarily an assault, but an assault is always an attempt and similarly that all attempted murders are accomplished by assaults. *See Flournoy v. State,* 25 Tex.App. 244, 7 S.W. 865 (1888); 16 Tex.Jur.2d, Criminal Law, § 30 (1960). *See also Sanchez v. Cupp,* 4 Or.App. 606, 480 P.2d 714 (1971); *State v. Lenahan,* 12 Ariz. App. 446, 471 P.2d 748 (1970).

■ We think that by analogy, an attempt at murder falling short of its goal but committed under circumstances that would have constituted voluntary manslaughter had death ensued, would give rise to no greater offense than aggravated assault [17] and that attempted voluntary manslaughter does not exist as a lesser included offense of attempted murder.[18]

There being no reversible error, the judgment of the trial court is affirmed.

BUTTS, Justice, dissenting.

I concur in the affirmance of the judgment. But I respectfully dissent to the majority holding that the offense of attempted voluntary manslaughter does not exist in Texas, or, at least, in this thirty-two county judicial district.

The effect of the holding is to deny a defendant the submission of a defense affirmatively and properly raised by the evidence. If at trial of a person accused of attempted capital murder or attempted murder, the facts show that attempted death may have been caused while the defendant was under the immediate influence of sudden passion arising from an adequate cause, that defendant is entitled to a jury

---

17. Aggravated assault under our present code may be committed when an actor intentionally, knowingly or recklessly causes bodily injury to another and the injury is "serious bodily injury; or where the actor uses a deadly weapon. Tex. Penal Code Ann. §§ 22.01(a)(1), 22.02(a)(1) and (2) (Vernon Supp.1982).

The indictment in the instant case alleged that appellant: * * * intentionally and knowingly attempt to cause the death ... by shooting ... with a gun...."

The indictment, therefore, sets forth an allegation of serious bodily injury by the language "attempt to cause the death". Tex.Penal Code Ann. §§ 22.01, 22.02(a)(1) and (3) (1974). Further, this attempt to cause death was occasioned by "shooting with a gun" and a gun is a deadly weapon. Tex.Penal Code Ann. § 22.-02(a)(3) (Vernon 1974). Such language in the indictment included the lesser offense of aggravated assault. *Hart v. State, supra, see also* Tex.Penal Code Ann. §§ 22.01, 22.02(a)(1) and (3) (Vernon 1974).

18. At least two jurisdictions have recognized that attempted voluntary manslaughter is not an offense per se but have affirmed convictions arising out of plea bargains under the theory that an accused should not be permitted to bargain for a lesser offense and later be heard to say that no such offense exists. *See People v. Foster,* 19 N.Y.2d 150, 225 N.E.2d 200, 278 N.Y.S.2d 603 (1967) and *People v. Genes,* 58 Mich.App. 108, 227 N.W.2d 241 (1975).

charge encompassing the lesser included offense of attempted voluntary manslaughter. There is yet another compelling reason to recognize the offense as a lesser included offense. It is now a settled principle that the trial court may, in homicide cases, under certain facts, properly deny a jury charge on aggravated assault when the weapon used by the defendant is a deadly weapon per se. This is because use of the deadly weapon gives rise to a presumption that an accused intended to kill the victim. *See Valore v. State*, 545 S.W.2d 477 (Tex.Cr. App.1977). The majority holding would leave a defendant with an "all or nothing" situation if the trial court could refuse to submit either of the lesser included offenses in a jury charge, even though the evidence raises the issue of attempted voluntary manslaughter.

The majority cites two cases to illustrate that "at least two jurisdictions have recognized that attempted voluntary manslaughter is not an offense per se...." *People v. Foster*, cited in the majority opinion, defined the New York law of manslaughter 225 N.E.2d at 201, 278 N.Y.S.2d at 605:

> [T]he crimes of manslaughter in the first degree and manslaughter in the second degree respectively are homicides committed 'without a design to effect death.'

Noting that there must be a specific intent to constitute an attempt, the court wrote:

> An attempt to commit manslaughter is apparently a contradiction because the specific crime of manslaughter involves no intent, and, accordingly, an intent to commit a crime whose distinguishing element is lack of intent is logically repugnant.

With this reasoning our Court of Criminal Appeals agrees. *Gonzales v. State*, 532 S.W.2d 343 (Tex.Cr.App.1976). It is readily apparent that the Texas involuntary manslaughter statute, Tex.Penal Code Ann. § 19.05 (Vernon 1974) possesses no specific intent element. The *Gonzales* court at 345 stated:

> Attempted involuntary manslaughter would be a contradiction in terms under the new penal code. Involuntary man-

slaughter negates any specific intent to kill. One cannot intend 'involuntarily' to kill another.... There is no offense of 'attempted involuntary manslaughter.'

It is obvious that the two manslaughter offenses discussed in the *Foster* case are the same as Texas' involuntary manslaughter offense in that a specific intent to kill is not an element of the offense.

In *People v. Genes*, cited in the majority opinion, 227 N.W.2d at 242, the court stated:

> We reject the defendant's contention that there is no such thing as attempted manslaughter. While there can be no such thing as attempted involuntary manslaughter, where the theory is *voluntary manslaughter there can be an attempt*. (Emphasis added.)

The concurring-dissenting opinion stated 227 N.W.2d at 245:

> With voluntary manslaughter there is an intent to take a life under provocation which is serious enough to deprive the killing of its malicious character. Involuntary manslaughter, however, involves no intent. (Citations omitted.)

> An essential element of the crime of attempt is an intent to commit the substantive crime. (Citations omitted.) Since the offense of voluntary manslaughter includes as an element an intent to take a life, voluntary manslaughter may be attempted. On the other hand, since the offense of involuntary manslaughter does not include as an element any intent whatsoever (citations omitted), ... it is impossible to attempt it. (Note: This writer believed the guilty plea of the defendant to the offense of 'manslaughter' was uncertain and possibly for a nonexistent crime).

Finally, the Court of Criminal Appeals recognizes that attempted voluntary manslaughter does exist as an offense which may be a lesser included offense of attempted murder. The conviction in *Morgan v. State*, 545 S.W.2d 811 (Tex.Cr.App.1977), was for attempted voluntary manslaughter, the indictment charging attempted murder.

The holding in the instant case would lead to a refusal by the trial courts to submit in a charge to the jury the lesser included offense of attempted voluntary manslaughter although raised by the evidence and requested as a charge. It creates a potential denial of a fair trial to the defendants in those cases. In my opinion, such a denial would assume constitutional dimension.

The evidence in the instant case fails to support a charge on attempted voluntary manslaughter. Therefore, I concur in the affirmance of the judgment and dissent to the part which would excise an offense from the penal laws.