PEOPLE v WHITE

1. CRIMINAL LAW—FINDINGS OF FACT—APPEAL AND ERROR.
   The Court of Appeals is not free to substitute its view of the facts
   in a criminal case for that of the trial judge unless, on the
   entire record, the Court is left with the definite and firm
   conviction that a mistake has been committed.

2. KIDNAPPING—DEFENSES—CONSENT.
   Consent, if satisfactorily shown not to have been obtained by
   fraud nor extorted by duress or threats, constitutes a complete
   defense to a charge of kidnapping (MCLA 750.349).

3. KIDNAPPING—DEFENSES—CONSENT.
   Consent, to be a defense to a charge of kidnapping, must be
   present throughout the commission of the offense; therefore,
   the fact that a complainant consented to certain acts which
   occurred subsequent to her being taken from her home against
   her will does not constitute a defense to a charge of kidnap-
   ping.

4. CRIMINAL LAW—TRIAL—FAIR TRIAL—IMPROPER CONDUCT—MIS-
   TRIAL.
   Conduct during the course of a defendant's trial which included a
   general fracas in which the defendant was restrained by a
   police officer and a spectator was forcibly ejected from the

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur 2d, Appeal and Error §§ 880–887.
   Advantage which the original trier of facts enjoyed over reviewing
   court from opportunity of seeing and hearing witnesses. 111 ALR
   742.
[2, 3] 1 Am Jur 2d, Abduction and Kidnapping §§ 15, 16.
[4] 53 Am Jur, Trial §§ 42, 43, 995, 997.
   Physical condition or conduct of party, his family, friends, or
   witnesses during trial, tending to arouse sympathy of jury, as
   ground for continuance or mistrial. 131 ALR 323.
[5, 6] 58 Am Jur, Witnesses §§ 708, 723 *et seq.*
[7] 21 Am Jur 2d, Criminal Law § 313.
[8] 21 Am Jur 2d, Criminal Law §§ 315, 319.
   Incompetency of counsel chosen by accused as affecting validity of
   conviction. 74 ALR2d 1390.

courtroom after making comments about "raping my sister" and referring to a "contract", a policeman talking to certain prosecution witnesses urging them to "give more" to help the prosecutor, and threats by the man ejected from the courtroom against the defendant's attorney and a codefendant's attorney did not require reversal of the defendant's conviction on the ground that he was deprived of his right to a fair trial where the defendant was given two opportunities by the trial judge to have a mistrial declared and both times refused the trial judge's offer.

5. CRIMINAL LAW—TRIAL—FAIR TRIAL—IMPROPER CONDUCT—PRESERVING QUESTION.

The fact that one of the prosecution's witnesses was improperly in the courtroom while defendant's trial was in progress and that the same witness was observed talking to the complainant in the hallway will not be considered for the first time on appeal in support of the defendant's contention that he was denied a fair trial where the defendant did not object to the admission of this witness's testimony.

6. CRIMINAL LAW—NONJURY TRIAL—FAIR TRIAL—IMPROPER CONDUCT —LEADING QUESTIONS.

Reversible error was not committed at defendant's trial although certain leading questions were asked by the prosecutor where no showing has been made, nor would the record support any contention, that the questions asked were part of a pattern of eliciting inadmissible testimony, and where no prejudice was suffered by defendant through the use of these questions.

7. CRIMINAL LAW—ASSISTANCE OF COUNSEL—EFFECTIVE ASSISTANCE.

A defendant was not denied the effective assistance of counsel because of the short time his trial attorney had for preparation where both defendant and his attorney affirmatively responded to the trial judge's questions whether they had had adequate time to prepare and whether they were ready to go to trial, where defendant's attorney had examined the preliminary examination transcript, discussed the case with defendant, with defendant's prior attorney, and with a codefendant's attorney, and where defendant's attorney was given the afternoon of the day of the trial to further prepare his case, despite the fact that he and defendant had earlier stated they were ready.

8. CRIMINAL LAW—ASSISTANCE OF COUNSEL—EFFECTIVE ASSISTANCE— MISTAKE OF COUNSEL.

Defense counsel's failure to sequester a defense witness and his

failure to properly pursue a defense of consent to a charge of kidnapping were not of such a magnitude as to require a retrial when judged by the applicable standard where but for the lawyer's mistake the defendant might not have been convicted.

Appeal from Recorder's Court of Detroit, John R. Murphy, J. Submitted Division 1 December 4, 1973, at Detroit. (Docket No. 16498.) Decided April 30, 1974.

William White was convicted of attempted kidnapping. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,* Chief, Appellate Department, and *Leonard Meyers,* Assistant Prosecuting Attorney, for the people.

*Elliott S. Hall,* for defendant on appeal.

Before: V. J. BRENNAN, P. J., and QUINN and CARLAND,* JJ.

V. J. BRENNAN, P. J. Defendant was jointly tried with Ronald Carney before a judge in the Detroit Recorder's Court on the charge of kidnapping (MCLA 750.349; MSA 28.581) and was found guilty of attempted kidnapping (MCLA 750.92; MSA 28.287). Defendant now brings this appeal urging several grounds for reversal of his conviction.

On October 8, 1972, at about 9:30 p.m., two men, Ronald Carney and Carl Brisco, appeared at the house of Erma Hill, the complainant, identified themselves as police officers, and exhibited a piece of paper which they described as an arrest warrant. The two men, one of whom was armed with a

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

gun, then instructed Miss Hill to accompany them "downtown" where things would be explained. The complainant complied with these instructions, left the house, and entered a car driven by defendant William White. The car, with complainant in it, was then driven away by defendant. For approximately the next 24 hours, during which time several people were picked up and dropped off, defendant and complainant visited various hotels, motels, and shops. A number of drug and sexual activities were engaged in before complainant was returned home the next evening by Ronald Carney.

At the time these events took place defendant and complainant were not unknown to each other. Three weeks prior to the incident involved in this case, complainant met defendant and was given a skirt, a wig, and $10 to ride in a car with him. Despite this, the trial judge, based on the corroborating testimony of Edward Nealy, her boyfriend, found that Miss Hill, against her will, was forcibly taken from her home by Ronald Carney and Carl Brisco, who did so with the intent to confine her. The trial judge also stated, however, that he was not convinced beyond a reasonable doubt that everything which occurred subsequent thereto was done against complainant's will. He further stated that the acts of Ronald Carney and Carl Brisco inside the house were done with the connivance of and after entering into an agreement with the defendant, William White. The trial judge based his conclusion in this regard on defendant's conduct subsequent to the actual taking. Defendant and Ronald Carney, on the above facts, were found guilty of attempted kidnapping.

Defendant first contends that the trial judge erred in finding defendant guilty of attempted

kidnapping because, defendant alleges, there was no evidence presented establishing that he was a party to any unlawful act, either directly or as an aider and abettor. We disagree. There was substantial competent evidence presented which, if believed, would support defendant's conviction for attempted kidnapping. We are not free to substitute our view of the facts for that of the trial judge's unless, on the entire record, we are left with the definite and firm conviction that a mistake has been committed. *People v Hubbard,* 19 Mich App 407; 172 NW2d 831 (1969), *aff'd,* 387 Mich 294; 196 NW2d 768 (1972). We are not so convinced.

Defendant's second contention is that the trial court erred in finding him guilty of attempted kidnapping because consent by the complainant constitutes a complete defense to a kidnapping charge and vitiates any attempt to kidnap. It must be remembered that the trial judge, sitting as the trier of fact, specifically found that complainant was taken from her home against her will. Complainant did not, therefore, consent to all that occurred but, rather, only to those acts which occurred subsequent to the actual taking. The question thus becomes whether complainant's later consent to the acts of defendant and the others relates back to the time of the actual taking and serves as a complete defense. This question must be answered in the negative. It is true that consent, if satisfactorily shown not to have been obtained by fraud nor extorted by duress or threats, does constitute a complete defense to the crime of kidnapping. MCLA 750.349; MSA 28.581. This does not mean, however, that consent obtained at any time during the subsequent confinement serves as such a defense. We believe that for

consent to be a defense to the crime of kidnapping it must be present throughout the commission of the offense. This is so because the offense is not only an offense against a particular individual but, using a frequently quoted phrase, is also an offense against society as a whole. See, e.g., Miller, Criminal Law, §§ 57–58, pp 171–176 (1934). This is particularly true where, as here, a weapon was used to achieve the desired result in the presence of persons other than the individual who is alleged to have subsequently consented.

Since we have determined that consent of the type which is said to have been present in the case before us does not constitute a defense to the crime of kidnapping, it is evident that it in no way requires reversal of defendant's conviction for attempted kidnapping.

Defendant next contends that the course and conduct of the trial, including conduct of the witnesses and spectators, was such as to deprive him of his right to a fair trial. During the trial, after a short recess had been taken, the trial judge returned to the courtroom and found that in his absence a general fracas had erupted. Defendant was restrained by a police officer and a spectator was forcibly ejected from the courtroom after making comments to defendant about "raping my sister" and referring to a "contract". The trial judge offered to declare a mistrial but his offer was rejected. The next day, again after a short recess, defendant's attorney complained to the court that during the break a policewoman had been talking to certain prosecution witnesses urging them to "give more" to help the prosecutor. Defendant's attorney also complained that the man who was forcibly ejected from the courtroom the day before had threatened him and the attorney representing

defendant Carney. The trial judge again asked if defendant wanted a mistrial and defendant's attorney again declined the offer. Defendant alleges that the conduct outlined above served to deprive him of his right to a fair trial and urges this Court to reverse his conviction. This we refuse to do. Defendant was given two opportunities by the trial judge to have a mistrial declared and both times the trial judge's offer was refused. Defendant, for whatever reason, decided to proceed with the trial to its conclusion. On these facts we cannot say that the error complained of requires reversal of this defendant's conviction.

Defendant, in support of his contention that he was denied a fair trial, also relies on the fact that one of the prosecution's witnesses was improperly in the courtroom while the trial was in progress and that this same witness was also observed talking to the complainant in the hallway. Our review of the record reveals that this witness was not in the courtroom during the entire trial but, rather, was present only during opening argument. It also appears from the record that, despite the fact that these occurrences were brought out during the course of the trial, defendant did not object to the admission of this witness's testimony. Accordingly, we will not consider this issue for the first time on appeal. *People v Pride,* 43 Mich App 165; 204 NW2d 20 (1972); *People v White,* 25 Mich App 176; 181 NW2d 56 (1970), *leave den,* 384 Mich 760 (1970).

Defendant's assertion that he was denied a fair trial through the trial court's frequent allowance of the prosecutor's use of leading questions is similarly without merit. In *People v Hooper,* 50 Mich App 186; 212 NW2d 786 (1973), a case tried before a jury, this Court held that, in order to

reverse a defendant's conviction because improper leading questions were asked by the prosecutor, it is necessary to show some prejudice or pattern of eliciting inadmissible testimony. While the instant case was tried without a jury, we do not think the standard for reversible error should be any more or less stringent. The evil sought to be prevented in both instances is improper prosecutorial conduct.

In the case at bar, although certain leading questions were asked by the prosecutor, no showing has been made, nor would the record support any contention, that the questions asked were part of a pattern of eliciting inadmissible testimony. Further, we are unable to discern any prejudice suffered by defendant through the use of these questions. We hold, therefore, that reversible error was not here committed.

Defendant finally contends that his conviction must be reversed because he was denied the effective assistance of counsel. We disagree. On this record we cannot say that the representation defendant received was only perfunctory, in bad faith, or a sham. See *People v Degraffenreid,* 19 Mich App 702; 173 NW2d 317 (1969). Similarly, we also cannot say that defendant's conviction must be reversed because of the short time defendant's trial attorney had for preparation. On the day of trial the attorney of record for defendant did not appear. Mr. McMasters, defendant's attorney throughout the trial, appeared instead and informed the court that he was asked by defendant to represent him. The trial judge then questioned defendant and his attorney as to whether they had had adequate time to prepare and as to whether they were ready to go to trial. Both responded in the affirmative. A reading of the record also re-

veals that Mr. McMasters, prior to trial, had examined the transcript of the preliminary examination, discussed the case with defendant, with defendant's prior attorney, and with defendant Carney's attorney. He was also given the afternoon of the day of trial to further prepare his case, despite the fact that he and defendant had earlier stated they were ready. We therefore find defendant's contention in this regard to be without merit.

In alleging that he was denied the effective assistance of counsel, defendant also relies on his counsel's failure to sequester a defense witness and his failure to properly pursue the defense of consent. Such errors are to be judged by the following standard:

"Where the lawyer's mistake is of such serious proportion that it may have been decisive, where but for the lawyer's mistake the defendant might not have been convicted, the court may, despite failure to have preserved the error by timely objection, grant a new trial." *People v Degraffenreid,* 19 Mich App 702, 716; 173 NW2d 317, 324 (1969).

The errors here complained of were not of this magnitude.

Conviction affirmed.

All concurred.