PEOPLE v GENES

OPINION OF THE COURT

1. CRIMINAL LAW—PLEA OF GUILTY—COMPLETED OFFENSE—ATTEMPTS.
   The fact that the record shows that the defendant in a criminal trial is guilty of the completed offense is not a ground for setting aside a conviction of attempt.

2. HOMICIDE—MANSLAUGHTER—ATTEMPTED MANSLAUGHTER—INVOLUNTARY MANSLAUGHTER—PLEA OF GUILTY—PLEA BARGAINING.
   A guilty plea to attempted manslaughter which is entered as part of a plea bargain may be accepted by the trial court even where the only possible theory of the crime is involuntary manslaughter and a jury conviction on the same charge might have to be reversed where the facts as presented on the trial record would support a finding of manslaughter.

CONCURRENCE IN PART, DISSENT IN PART BY BRONSON, J.

3. HOMICIDE—MANSLAUGHTER—INVOLUNTARY MANSLAUGHTER—ATTEMPT—PLEA OF GUILTY—NONEXISTENT CRIME—INTENT.
   *An essential element of any crime of attempt is an intent to commit the substantive offense, and since the crime of involuntary manslaughter involves no intent whatsoever, it is impossible to attempt it; and because it is the law that one cannot be convicted of a nonexistent crime, it is equally impermissible to allow a guilty plea to such a nonexistent crime to be accepted by the trial court.*

4. CRIMINAL LAW—APPEAL AND ERROR—PLEA OF GUILTY—NONEXISTENT CRIME—DEFENSE COUNSEL—ESTOPPEL.
   *Defense counsel cannot be allowed to sit back and harbor error to be used as an appellate parachute in the event of jury failure, and therefore where counsel stands mute and allows an offered plea of guilty to a nonexistent crime to be accepted by the trial*

REFERENCES FOR POINTS IN HEADNOTES
[1, 4] 21 Am Jur 2d, Criminal Law §§ 459, 484–496.
[2] 40 Am Jur 2d, Homicide §§ 565, 568.
[3] 40 Am Jur 2d, Homicide §§ 54, 70.

*judge in an otherwise error-free hearing, he will be estopped from raising this error for the first time on appeal.*

Appeal from Recorder's Court of Detroit, Thomas L. Poindexter, J. Submitted Division 1 September 10, 1974, at Lansing. (Docket No. 18911.) Decided January 28, 1975.

Samuel A. Genes was convicted, on his plea of guilty, of attempted manslaughter. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Patricia J. Boyle,* Principal Attorney, Research, Training and Appeals, and *Arthur N. Bishop,* Assistant Prosecuting Attorney, for the people.

*George C. Dovas,* for defendant on appeal.

Before: BRENNAN, P. J., and BRONSON and VAN VALKENBURG,* JJ.

VAN VALKENBURG, J. The defendant was originally charged with second degree murder. MCLA 750.317; MSA 28.549. After negotiating a plea to manslaughter, MCLA 750.321; MSA 28.553, the defendant appealed and this Court reversed in an order dated May 21, 1973. On remand further negotiations were conducted and the defendant pled guilty to a charge of attempted manslaughter. MCLA 750.321; MSA 28.553; MCLA 750.92; MSA 28.287. The defendant now appeals contending that it was error to accept his plea because there is no such crime as attempted manslaughter. We affirm.

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

We preface our discussion by noting that the fact that the record shows that the defendant is guilty of the completed offense is not a ground for setting aside a conviction of attempt. *People v Bradovich,* 305 Mich 329; 9 NW2d 560 (1943). Thus, the fact that the victim died would not prevent an attempt conviction.

We must reject the defendant's argument that there is no such thing as attempted manslaughter. While there can be no such thing as attempted involuntary manslaughter, where the theory is voluntary manslaughter there can be an attempt. See LaFave & Scott, Criminal Law, § 59 p 423. The draftsmen of the proposed Michigan Revised Criminal Code state the rule as follows in their comments to Section 1001, p 82, of the code:

"The proposed definition of attempt follows the conventional pattern of limiting this inchoate crime to purposeful conduct, *i.e.,* the actor must have an 'intent to commit a specific offense.' Thus, where criminal liability rests on the causation of a prohibited result, the actor must have an intent to achieve that result even though violation of the substantive offense may require some lesser *mens rea.* Reckless driving, for example, does not constitute attempted manslaughter. A person charged with the substantive crime of manslaughter may be liable as a result of negligence or recklessness causing death, but the same recklessness would not be sufficient if the victim did not die and the actor were only charged with attempt; here, the state would have to show an intent to achieve the prohibited end result, death of the victim. In this area, as in others if the substantive crime requires only recklessness, the *mens rea* requirement for an attempt is substantially higher than that for the substantive crime."

We also believe that a plea to attempted manslaughter may be accepted even when the only possible theory is involuntary manslaughter. A

guilty plea to an attempt charge entered as a part
of a plea bargain may be accepted even though a
jury conviction on the same charge might have to
be reversed. We reject the *dicta* to the contrary
contained in a footnote to *People v Brandon,* 46
Mich App 484; 208 NW2d 214 (1973). On several
occasions this Court has upheld pleas to attempt
charges when, at least arguably, a jury conviction
would have been reversed. *People v Pickett,* 21
Mich App 246; 175 NW2d 347 (1970); *People v
Miller,* 25 Mich App 586; 181 NW2d 610 (1970);
*People v Burgan,* 27 Mich App 216; 183 NW2d 413
(1970). We see no reason for departing from the
rule of these cases.

The court rule, GCR 1963, 785.7(3)(c), provides
that the factual basis for the plea must be placed
on the record. This factual basis may support a
finding that the defendant is guilty of either the
crime charged or the crime pled to. Where the
factual basis would support a finding of man-
slaughter a plea to attempted manslaughter may
be accepted. When a plea is otherwise proper, a
defendant may plead guilty to an attempt, even
though a jury conviction might be improper.

In *People v Foster,* 19 NY2d 150; 278 NYS2d
603; 225 NE2d 200 (1967), the New York Court of
Appeals was faced with a contention that a plea to
attempted involuntary manslaughter was a nul-
lity, had no basis in law, and violated due process.
The Court answered these contentions as follows:

"[There is no violation] * * * when a defendant
knowingly accepts a plea to attempted manslaughter as
was done in this case in satisfaction of an indictment
charging a crime carrying a heavier penalty. In such
case, there is no violation of defendant's right to due
process. The defendant declined to risk his chances with
a jury. He induced the proceeding of which he now
complains. He made no objection or complaint when

asked in the presence of his counsel whether he had any legal cause to show why judgment should not be pronounced against him, and judgment was thereafter pronounced. As a result the range of sentence which the court could impose was cut in half—a substantial benefit to defendant."

The defendant has received the benefit of his bargain and we decline to hold that it was error to accord him this benefit.

Affirmed.

V. J. BRENNAN, P. J., concurred.

BRONSON, J. *(concurring in part and dissenting in part).* I write separately in this case, because I am troubled by two aspects of it, one of which was discussed in the majority opinion.

Defendant Genes pled guilty this second time[1] to attempted manslaughter. I have endeavored to determine whether he pled guilty to attempted voluntary manslaughter or attempted involuntary manslaughter. A complete search of the record and close scrutiny of the plea transcript has failed to resolve this question.

The original information charged Genes with second-degree murder. Defense counsel filed a motion to have the information amended to charge manslaughter—on the authority of *People v Mc-Miller,* 389 Mich 425; 208 NW2d 451 (1973)—but that motion, though docketed, was apparently

---

[1] His first plea, as noted by the majority, was to manslaughter, reduced from second-degree murder. After that conviction was reversed by this Court on May 21, 1973, he pled guilty again, this time to attempted manslaughter. The trial judge, the prosecutor and defense counsel all agree that *People v McMiller,* 389 Mich 425; 208 NW2d 451 (1973), precluded charging Genes with second-degree murder on remand. *McMiller* was decided on June 18, 1973, after Genes' original plea-based conviction had been reversed but before the second plea was taken. I offer no opinion as to the applicability of *McMiller* to such facts and given the charge to which Genes has pled guilty on remand, the question is not presented for decision.

never acted upon. The record before us, therefore, indicates that on remand Genes was still being charged with second-degree murder.[2] The problem presented by this state of the record is that we do not have before us an information charging manslaughter. The reason that this is a problem is that the pleading requirements for voluntary and involuntary manslaughter differ considerably.

An information charging involuntary manslaughter must be much more specific than one charging voluntary manslaughter. While voluntary manslaughter may be charged by merely stating that defendant killed the deceased, MCLA 767.71; MSA 28.1011, an information charging involuntary manslaughter must include the particular facts upon which the charge rests—*i.e.,* the particular acts which the defendant is said to have committed and which are said to be responsible for the death. *People v Ryczek,* 224 Mich 106; 194 NW 609 (1923); *People v Maki,* 245 Mich 455; 223 NW 70 (1929). Thus, if we had before us an information charging manslaughter, we could determine whether the charge was voluntary or involuntary manslaughter and *a fortiori* whether Genes pled guilty to attempted voluntary or attempted involuntary manslaughter.

Careful consideration of the factual basis elicited by the trial judge does not enlighten us as to which type of manslaughter was charged either.[3]

---

[2] In addition to the absence of any action on the motion to amend the information the trial judge appears to have read parts of the second-degree murder complaint to Genes during the taking of the plea:

"*The Court:* Defendant, the charge in this case is that on July 17, 1972, you were at 3455 Heidelberg Street in the City of Detroit, and that at that time you shot and killed Annie Alexandria with a .410-gauge Ithaca shotgun without excuse or justification."

[3] "*The Court:* Can you tell me in your own words what happened just prior to your firing this shotgun at Annie Alexandria?

"*Defendant Genes:* Me and this other fellow got into it about some

Though sufficient to indicate with reasonable certainty that defendant committed the completed crime charged and sufficient to support the usual guilty plea, it is insufficient to enable us to determine the nature of Genes' *intent* at the time of the offense. It is precisely the element of intent which is the factor distinguishing the two types of manslaughter.

The majority avoids the thorny problem just described by saying that it makes no difference which type of manslaughter Genes was charged with. It is here that I disagree with my colleagues. It does make a difference, because attempted voluntary manslaughter is a crime, while attempted involuntary manslaughter is not.

With voluntary manslaughter there is an intent to take a life, under provocation which is serious enough to deprive the killing of its malicious character. Involuntary manslaughter, however, involves no intent. See, generally, 3 Gillespie, *Michigan Criminal Law and Procedure,* § 1664, p 2006, and cases cited.

An essential element of the crime of attempt is an intent to commit the substantive crime. *People v Bauer,* 216 Mich 659, 661; 185 NW 694 (1921). Since the offense of voluntary manslaughter includes as an element an intent to take a life, voluntary manslaughter can be attempted.[4] On the

___

money he owed me and she got into it also after I told her to stay out of it.

"*The Court:* And is that when you shot her with the shotgun—you did have a shotgun at that time?

"*Defendant Genes:* Yes, sir.

"*The Court:* And is that when you shot her with that shotgun?

"*Defendant Genes:* Yes, sir."

[4] I agree with the majority that the fact that the substantive crime was completed here does not preclude acceptance of a guilty plea to an attempt. See *People v Royal,* 52 Mich App 10; 216 NW2d 427 (1974); *People v Donald Haywood,* 27 Mich App 377, 378; 183 NW2d 623 (1970).

other hand, since the offense of involuntary manslaughter does not include as an element any intent whatsoever, *People v Townsend,* 214 Mich 267; 183 NW 177 (1921), but rather imposes punishment for culpable negligence, it is impossible to attempt it.

The majority concedes that there is "no such thing as attempted involuntary manslaughter" but concludes that nevertheless a defendant may plead guilty to it. I acknowledge the cases cited in support of that view, but do not agree with them. It is the law, so far as I understand it, that one cannot be convicted at trial of a non-existent crime. *People v Brandon,* 46 Mich App 484; 208 NW2d 214 (1973); *People v Richard Banks,* 51 Mich App 685; 216 NW2d 461 (1974). It is equally impermissible to allow a plea of guilty to a non-existent crime. See *People v Brandon, supra,* note 8; *People v Richard Banks, supra,* note 8. The responsibility for creating and defining criminal offenses, authorizing law enforcement agencies to prosecute those charged with violating the offenses, and empowering courts to determine whether such offenses have been committed lies solely with the Legislature. The judicial legislation which underlies the majority decision in this case, however much it serves to improve the plea bargaining process, is improper and should not be condoned.

I would therefore reverse[5] Genes' conviction in this case were it not for a second peculiarity which causes me great concern and on the basis of which I concur in result only.

---

[5] I would reverse, rather than remand to settle the record, because when doubt arises as to what a defendant has been convicted of, we are obliged to resolve that doubt in favor of the accused. *People v McNary,* 43 Mich App 134; 203 NW2d 919 (1972), *aff'd* 388 Mich 799 (1972). I would therefore, for purposes of this appeal, assume that Genes pled guilty to attempted involuntary manslaughter and reverse because of my belief that it is impermissible to accept a plea of guilty to a non-existent crime.

When Genes' first guilty plea was reversed by this Court, he was represented by the same lawyer who now represents him on this appeal, and who represented him at the plea proceedings from which this appeal was taken. That lawyer was active in the plea negotiations[6] which resulted in the second guilty plea to attempted manslaughter.

The trial judge, Thomas L. Poindexter, to his credit, at the outset of the plea proceeding inquired of the prosecutor: "Is there such an offense as attempted manslaughter?" After a sidebar conference between Judge Poindexter and the prosecutor and repeated assurances from the latter that "the attempt statute covers manslaughter", the taking of the plea continued and the plea was ultimately entered and accepted.

Throughout the initial period of uncertainty as to whether the offered plea could properly be accepted, defense counsel stood mute. Though "ow-[ing] an obligation to assist the trial judge in the discharge of his duties under the court rule", *People v Hubbard,* 57 Mich App 542; 226 NW2d 557 (1975), defense counsel did not offer such assistance, but rather "wait[ed] silently for reversible error to be created in an otherwise error-free hearing". *People v Hubbard, supra.*

It is my firm belief that defense counsel, who now on appeal is asserting error which he himself created by negotiating the plea accepted below and which he could have prevented by forthrightly acknowledging it when it was clear that the trial judge was troubled by what was for him "the first

---

[6] "*The Court:* I understand the possible sentence in this case has been the subject of discussion between Mr. McConnell and you agreed upon a plea to attempted manslaughter, the five-year maximum felony; is that correct?

"*Mr. Dovas:* That is correct, your Honor—as a result of the negotiations between myself and the prosecuting attorney's office."

time such an offense has ever been suggested to the court", should be estopped from raising this error for the first time on appeal.

The cases are legion which hold that error waived below will not be considered on appeal, absent manifest injustice. See, *e.g., People v Duncan,* 55 Mich App 403; 222 NW2d 261 (1974); *People v White,* 53 Mich App 51; 218 NW2d 403 (1974); *People v McLendon,* 51 Mich App 543; 215 NW2d 742 (1974); *People v Pacely,* 51 Mich App 67; 214 NW2d 561 (1974); *People v Flatt,* 44 Mich App 452; 205 NW2d 303 (1973). In addition, MCLA 769.26; MSA 28.1096 directs that no error "as to * * * pleading and procedure" shall require a reversal of a conviction unless "the error complained of has resulted in a miscarriage of justice". The error urged fits within this statute since it concerns the integrity of the guilty plea procedure utilized in this case. I can perceive no justification for holding that Genes has been unjustly convicted here.[7] On the contrary, it would under these circumstances be manifestly unjust and a miscarriage of justice for us to consider the error urged. As was stated in *People v Brocato,* 17 Mich App 277, 305; 169 NW2d 483 (1969): "Counsel cannot sit back and harbor error to be used as an appellate parachute in the event of jury failure." The same is true when judge-made, counsel-induced, error is involved.

A similar situation was presented in *People v Jaworski,* 387 Mich 21; 194 NW2d 868 (1972), and the following language from Justice WILLIAMS' opinion in that case is appropriately reiterated here:

---

[7] Any request by Genes for relief for his lawyer's failure to object below to the error complained of for the first time here should be directed to the State Bar Grievance Board.

"This Court could not fail to note that this appeal was brought by the same counsel who assisted the defendant, and, presumably as an officer of the court, the trial court as well. A certain anomaly is evident. On the one hand this attorney counseled with defendant presumably advising him of his legal rights in submitting a guilty plea, in this case even certifying in writing, with approval, defendant's written statement that he pleads 'understandingly.' On the other hand, the same counsel, not too many months later, helps defendant petition to review the guilty plea procedure on the claim that defendant did not 'understandingly' waive his *Boykin* rights." *Jaworski, supra,* at 32.

I concur in affirming Genes' conviction on the ground that defense counsel's failure to raise the issue below which he now asserts as reversible error on appeal, under the circumstances here presented, must preclude us from considering it.