## PEOPLE v SMITH

1. APPEAL AND ERROR—CHEMICAL AND MICROSCOPIC TESTS—FAILURE
   TO OBJECT—PRESERVING QUESTION.
   The reliability of chemical and microscopic tests used to identify
   a controlled substance will not be considered for the first time
   on appeal when no objection to their admission was raised at
   the trial level and no clear injustice is presented.

2. DRUGS AND NARCOTICS—EVIDENCE—BIRTH RECORDS—ADMISSIBILITY
   —CUMULATIVE EVIDENCE—HARMLESS ERROR.
   The admission in evidence of a public birth record which was not
   properly authenticated, to establish the age of a defendant
   charged with sale of a controlled substance to a person more
   than five years his junior, was harmless error, where the court
   had before it other admissible evidence of defendant's age and
   the birth record was merely cumulative and beyond a reasona-
   ble doubt did not contribute to defendant's conviction.

3. INDICTMENT AND INFORMATION—DATE OF OFFENSE—ALIBI—INFER-
   ENCES.
   The failure of a court to confine its deliberations to the specific
   date of the offense as charged in the information and com-
   plaint, even though an accused's defense for that date was one
   of alibi, is not reversible error, where there was uncontradicted
   evidence, or reasonable inference capable of being drawn there-
   from, to indicate that the offense took place and that it occur-
   red on a date other than that charged.

4. CRIMINAL LAW—NOTICE OF ALIBI—DATE OF OFFENSE—VARIANCE—
   SPECIFICITY—STATUTES.
   The notice-of-alibi statute does not require the prosecution to give
   notice of the specific time or place the alleged offense was
   committed and therefore the burden is on the defendant to seek
   specificity from the prosecutor in preparing his alibi defense;
   but, where defense counsel has not filed a motion seeking such

REFERENCES FOR POINTS IN HEADNOTES
[1] 5 Am Jur 2d, Appeal and Error § 618.
[2] 25 Am Jur 2d, Drugs, Narcotics, and Poisons § 46.
[3–5] 41 Am Jur 2d, Indictment and Information §§ 267, 273, 276.

specificity, but has vigorously pursued a specific date at both the preliminary examination and the beginning of the trial, he has met the practical requirements of the Michigan statute (MCLA 767.45[2], 767.51, 768.20).

5. INDICTMENT AND INFORMATION—DATE OF OFFENSE—VARIANCE—LATITUDE.

The people are entitled to some latitude in fixing the date of an offense, and variance between the proofs and the complaint is not fatal provided the verdict is confined to the particular act within the scope of the complaint upon which the people introduce evidence for the purpose of procuring a conviction.

Appeal from Hillsdale, Kenneth G. Prettie, J. Submitted Division 2 December 9, 1974, at Lansing. (Docket No. 18782.) Decided January 28, 1975. Leave to appeal denied, 394 Mich 775.

Steven D. Smith was convicted of delivering marijuana to a minor more than five years his junior. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Lawrence L. Hayes, Jr.,* Prosecuting Attorney (Prosecuting Attorneys Appellate Service, *Edward R. Wilson, III,* Director, by *William P. Weiner,* Special Assistant Attorney General), for the people.

*Stuart M. Israel,* Assistant State Appellate Defender *(Thomas Nowinski,* of counsel) for defendant on appeal.

Before: DANHOF, P. J., and BASHARA and ALLEN, JJ.

ALLEN, J. The defendant was convicted in a non-jury trial of delivering marijuana to a person under 18 years of age and more than five years defendant's junior, contrary to MCLA 335.346(1); MSA 18.1070(46)(1) and MCLA 335.341(1)(c); MSA 18.1070(41)(1)(c). On September 17, 1973, defendant

received a sentence of 2-1/2 to 8 years in prison, and appeals.

Defendant raises three issues on appeal:

I That the tests used by the state police crime laboratory were so deficient as to be insufficient and incompetent to serve as a basis for identification of the controlled substance;

II That the trial court erred in admitting the arresting officer's testimony regarding defendant's age and in admitting a public record of defendant's birth;

III That the factfinder failed to confine its deliberations as to the date of the offense to May 25, 1973.

I

Hugh M. Fish, employed at the State Police Crime Laboratory testified that he used the "Duquenois" reagent test and a microscopic test to identify the substance in question. He then said that he determined this to be marijuana. Defense counsel specifically said that he had no objection to Fish's qualifications as an expert witness, and failed to voice an objection to the use of the various tests. On appeal, defendant asserts that these tests are unreliable. In light of *People v Alexander,* 56 Mich App 400; 223 NW2d 750 (1974), we are constrained to hold the contrary. Generally, issues not raised below are not considered for the first time on appeal. See *People v White,* 53 Mich App 51, 57; 218 NW2d 403 (1974), and cases cited therein. Defense counsel moved to strike Fish's testimony on the theory that defendant had been denied due process of law because

Fish was an expert employed by the state whereas defendant lacked the means and ability to secure a "counter expert" to confront Fish's findings. This issue was not raised on appeal, and we find no clear injustice presented that would require us to find that the tests used to identify the controlled substance are unreliable.

## II

The prosecutor has agreed that the police officer's testimony and report regarding defendant's date of birth were hearsay and should have been excluded by the trial judge. See *Sterling v Detroit,* 134 Mich 22, 25; 95 NW 986 (1903). However, the prosecutor argues that because a birth certificate from the county clerk's office was properly admitted, the error in admitting the police officer's testimony was harmless beyond a reasonable doubt. *People v Harrison,* 49 Mich App 546, 551; 212 NW2d 278 (1973). Defendant, on the other hand, argues that the certificate from the county clerk's office was improperly admitted on the grounds that no proper foundation had been established, and that the public record was not authenticated. Finally, even if our Court finds the record to have been authenticated, defendant argues that the record was irrelevant to defendant's case on the grounds that the people failed to establish that the certificate at issue proves the date of birth of defendant rather than the date of birth of some other Steven D. Smith.

At trial, the prosecutor offered "the official public records of the county clerk's office regarding the certificate of live birth of Steven Darrell Smith". Although the prosecutor said that he would ask "Miss Pish whether these are the records", he stated "I don't think it's necessary to

do". Defense counsel objected to the admission of this record on the grounds that there was no proof to show that this was the record of defendant instead of some other Steven Darrell Smith, stating "I object as irrelevant and immaterial". The trial court overruled the objection, and read the record. The judge stated that it "evidences the birth of one Steven Darrell Smith on April 9, 1951". The father of the child was listed as Fred J. Smith. The mother's maiden name was shown as LaVerna Parcell. Having stated that portion of the record in the transcript, the judge returned the volume of birth certificates to the county clerk.

Unlike the situation in *Breitmayer v United States*, 249 F 929, 933 (CA 6, 1918), no testimony was specifically presented to indicate that the Steven Darrell Smith in the birth certificate was indeed defendant. Also, the people failed to show that the Fred J. Smith listed in the certificate was defendant's father. While defendant's sister testified that her mother's name was LaVina, the people failed to show that she was in fact the person listed as the mother in the birth certificate. Although such records are prima facie evidence of the name, sex, color, and date and place of birth of the child listed therein, MCLA 326.16(6); MSA 14.236(6), the people failed to show the relevance of the birth certificate at issue. Generally, "the materiality and relevancy of evidence" is within the trial court's discretion, and our Court will not reverse its determination "unless there [has been] an abuse". *People v Moore,* 51 Mich App 48, 52; 214 NW2d 548 (1974). If there was in fact an abuse of discretion and error was committed, it was harmless beyond a reasonable doubt and did not contribute to defendant's conviction. *People v Robinson,* 386 Mich 551, 562–563; 194 NW2d 709 (1972).

The official records showed that a Steven Darrell Smith was 22 years old as of April 9, 1973. Michael Gary, the prosecutor's main witness against defendant, testified that defendant had told him that he was 22 years old. This statement clearly falls within the admissions exception to the hearsay rule. McCormick, *Evidence,* (2d Ed), § 262, p 628. Since the trial court had before it evidence of defendant's age, no miscarriage of justice resulted when the record of birth certificates was admitted at trial. MCLA 769.26; MSA 28.1096 and GCR 1963, 529.1. The birth record was merely cumulative and if the trial court abused its discretion in admitting the record into evidence, we find no miscarriage of justice. *People v Hall,* 56 Mich App 10, 19; 223 NW2d 340, 345 (1974).

## III

Defendant's final argument is a three-pronged attack upon the trial court's failure to confine its deliberations as to the date of the offense to May 25, 1973, the specific date set forth in the complaint, warrant, return to circuit court, and in the videlicet of the information, the body of which recited that the offense occurred "on or about the date of the offense set forth above". Defendant argues that Michael Gary was the only witness who connected defendant with the delivery of marijuana, and that Gary said that the event took place May 25. Relying upon *People v Brocato,* 17 Mich App 277; 169 NW2d 483 (1969), and *United States v Henderson,* 434 F2d 84 (CA 6, 1970), defendant argues that the prosecutor was bound to limit his proofs to that day, and that the trial court's decision to allow the prosecutor to prove that the delivery took place some time previous to that date violated defendant's presumption of in-

nocence and allowed the people to shift the burden of proof to defendant. Second, relying upon *Commonwealth v Boyer*, 216 Pa Super 286; 264 A2d 173 (1970), and the cases cited therein, defendant argues that his assertion of an alibi defense makes "time of the essence", and that any variance between the proofs and the date alleged in the information is fatal to defendant's conviction. Third, defendant argues that even if a variance is allowed, the prosecutor failed to allege and prove an alternate date, thus depriving defendant of his right to prepare an adequate defense. It is alleged that the people failed to offer proof of another specific date, and that this vague charge against defendant violated his right to due process of law and the right to be informed of the nature of the accusation against him. US Const, Am XIV, Const 1963, Art 1, §§ 17, 20. A recitation of the relevant facts is necessary to enable one to understand and comprehend this issue.

At the preliminary examination held July 9, 1973, defense counsel initially raised objection to the warrant which had been issued upon a detective's "information and belief". Counsel stated that there was no allegation as to time and place. After the detective was questioned, defense counsel argued that his client was not prepared for the examination on the grounds that he was not apprised of a specific date, time and place of the offense. The trial court then ordered the people to prepare a new complaint and warrant. After a short recess, a new complaint was prepared and defense counsel offered no objection thereto.

At the examination, Michael Gary, the people's main witness against defendant, and the purchaser of the controlled substance, testified that he obtained the marijuana from defendant on May 25,

1973. In response to the prosecutor's question as to whether the witness had "ever" smoked marijuana with defendant or had "ever" received marijuana from defendant, defense counsel objected on the grounds that defendant had been charged with a specific act on a specific date, May 25, and the trial court told the prosecutor to limit his questions to the event of May 25. Although the prosecutor couched his question in terms of "on or about May 25", Gary continued to testify that the event took place May 25. However, upon cross-examination by defense counsel, he was unable to remember what day of the week was the 25th, and in fact stated the event might have taken place on the 24th or the 26th. He said that it took place "around the 25th". However, Gary subsequently testified that the transaction took place on May 25. As we will see later, Gary in turn delivered some of this controlled substance to another party, and said that although he did not know what day of the week that took place, it occurred in the last week of May. Upon redirect examination, the prosecutor, in an attempt to "pinpoint" the date of the sale, elicited from Gary the statement that the event took place May 25, 1973. Gary also replied "yeah" to the prosecutor's leading question that this took place "toward the end of the school year, is that right?"

Jeff Miller, the person to whom Michael Gary delivered a portion of the controlled substance, replied affirmatively to the prosecutor's statement that "on or about May 25, 1973" he received some controlled substance from Michael Gary. He said that he turned this over to his school principal about May 25, and upon cross-examination testified that he gave the substance to his school principal on Friday after having received it from Gary

on Wednesday. Wednesday was May 23, and Friday was May 25. The school principal was unable to give an exact date as to when he received the controlled substance, and the detective replied affirmatively to the prosecutor's question as to whether "on or about May 25" he was contacted by the principal regarding the controlled substance. The district court judge bound defendant over for trial, stating that he found "on or about May 25, 1973", defendant "had occasion to deliver" the controlled substance to Michael Gary.

July 16, 1973, defendant was arraigned in circuit court upon the information, and waived reading of the information and the statutes under which he was charged. The return to circuit court stated that the day of the offense was May 25, 1973. We have seen that the videlicet listed the date of offense as May 25, 1973, and that the body of the information said "on or about the date of the offense set forth above".

August 3, 1973, defendant filed a notice of alibi defense, in which it was stated that "during the week of May 25, 1973" he participated in the operation of a yard sale at his mother's home. During the pretrial conference summary, which was held July 23, 1973, it was recited therein that defense counsel was going to file a claim of alibi for the date of May 25, 1973.

Trial was held August 31, 1973. In his opening statement, the prosecutor stated that the people would show "on a date in the latter part of May" defendant delivered some controlled substance to Michael Gary. Defense counsel argued that on May 25, defendant was at his mother's home conducting a yard sale. He argued that defendant was involved in the sale on May 24 and May 25, and that defendant did not see Michael Gary on

May 25. Defense counsel argued that his evidence would show that defendant was present at his mother's home from 2 p.m. to 5 p.m. on May 25, 1973.

Michael Gary then was called to the stand, and was asked whether, sometime before the end of the school year, he had ridden in defendant's van and had purchased some marijuana. Defense counsel objected, stating that the date of the offense was charged to be May 25, 1973, and argued that the people should be bound to that date. Defense counsel argued that defendant was surprised at the prosecutor's apparent change of dates, and asserted that defendant was not prepared to defend against such a claim. The trial court overruled defense counsel's objection, specifically referring to the "on or about" language in the information.

Michael Gary testified that the transaction at issue occurred May 25, 1973. He distinctly said that rather than "some time in May," the offense occurred specifically May 25. Gary said that he had the marijuana "a matter of a few days," before he sold some of it to Miller, and said that he sold the substance to Miller "around the second day I went back."

Miller could not remember the exact date of his transaction with Gary. He said it was some time in May, and that he placed his purchase in his locker and kept it there for a couple of days. He then put it inside his drum case, where it was subsequently discovered. On the day of its discovery, Miller turned it in to the school principal. Miller said he had it in his locker for two days before he transferred it to the drum case.

The school principal testified that Miller delivered the marijuana to him, but failed to state what

day this occurred. However, Charles Sharpe, the police officer, testified that he went to the school on May 25, and received the marijuana from the school principal on that day. The officer testified on rebuttal and said that he definitely had picked up the substance on the 25th.

It was thus obvious that Gary was mistaken as to the exact day of the transaction, and the prosecutor conceded as much when he began his closing argument. However, he argued that the offense was charged "on or about" May 25, and argued that Gary had been mistaken as to the date of the transaction. If Gary had the marijuana for two days before he sold it to Miller, and if Miller had it for two days in his locker before it was discovered on May 25, the date of the offense would be May 21, 1973.

Defendant's defense was that of alibi. A mailman testified that on Thursday, May 24, and Friday, May 25, he saw defendant at the yard sale. He also said that he saw defendant there on Saturday, May 26. He said that he saw defendant on Thursday and Friday between 12 and 1 o'clock, as well as about 10 minutes thereafter. Also, on Friday, he returned to the premises about 5 p.m. with a companion to purchase some of the items at the yard sale. He said he was there from 5 p.m. until shortly before 6 p.m. on Friday. However, he said he was not present at defendant's yard sale between the hours of 1:30 p.m. and 5 p.m. on Friday.

Gertrude Flowers, a neighbor, testified that she saw defendant every day during the course of the yard sale, particularly during the daylight hours. Specifically, she said that she saw defendant there until 5 or 6 p.m. every day of the yard sale. Elgie Flowers, her husband, said that, as did his wife, he

saw defendant at the yard sale whenever he looked out of his window. He said he saw defendant between 3 and 4 p.m. on more than one occasion, and said it might have been four days of that week. However, he later stated that he did not know exactly what time he saw defendant.

Defendant's sister, Judy Blount, testified she saw defendant at the yard sale on May 23, Wednesday. She was there from 10 a.m. until 3 p.m. and saw defendant there until she left. Except for a short time between 1 and 1:30 in which she went shopping, she saw defendant on May 23, 1973. Defendant's other sister, Brenda Burger, said that she was at the yard sale on Thursday, May 24, between 3:20 p.m. and 4 p.m. She said that she was there to pick up her mother to go grocery shopping. She also said that she saw defendant either Friday or Saturday afternoon some time between 12 and 1 p.m.

Robert Aube, an owner of a gas station, testified that he went to the yard sale looking for some tools and other such items. He said that he was at the sale on Friday, the 25th, from a little before 3 p.m. until some time between 4:30 and 5 p.m. Richard Aube testified that he saw defendant at the yard sale first as Aube drove by the house and again when he stopped for a short visit about 4 or 5 p.m.

Michael Gary testified that classes ended at 2:16 p.m. The principal of the school corroborated this fact. Gary testified that the sale took place in the afternoon after he went downtown and met defendant in a park.

The foregoing recitation of facts precludes defendant's reliance on *People v Brocato,* 17 Mich App 277; 169 NW2d 483 (1969), and *United States v Henderson,* 434 F2d 84 (CA 6 1970). In both of

those cases, there was nothing in the record to support a finding that the offense had occurred other than the day charged in the information. Thus, although the information utilized the "on or about" language, the court said that the fact finder should have confined its deliberations to the exact day listed in the information. *Brocato,* said that allowing the jury to find that the offense had occurred on some other date was "particularly prejudicial" because defendant and three of his witnesses were able to support defendant's alibi and account for his activities on the night in question. 17 Mich App 277, 288; 169 NW2d 483, 488. *Henderson,* relied upon *Brocato,* and said because there was no variance in the proof, the trial judge erred in instructing the jury on variance. An instruction allowing the jury to find defendant guilty on another day was held to have foreclosed defendant's defense in light of the absence of proof of variance. 434 F2d 84, 88–89.

In the case now before us there was evidence, or reasonable inference capable of being drawn therefrom, to indicate that the offense took place and that it occurred on a date other than May 25, 1973. The police officer was certain that he received the controlled substance on May 25. There is nothing in the record to contradict Miller's statement that he had the substance in his locker for two days before it was discovered, nor does anything contradict Gary's statement that he had the substance at least two days before he sold it to Miller. Thus, there was proof of some other day, and we find no merit to defendant's initial contention on issue three.

As noted earlier, defendant relies upon *Commonwealth v Boyer,* 216 Pa Super 286; 264 A2d 173, 175–176 (1970), for support of the second

claim in issue three, *viz.* that the defense of alibi makes time of the essence, and that any variance between the date in the information and the date presented in the evidence is fatal to one's conviction. *Boyer* held that a one-day variance where defendant's alibi was specifically limited to the date charged in the information was reversible error, and the court said:

"To charge him [defendant] with knowledge that the Commonwealth meant the night of December 27, would be to charge him with a guilty knowledge contrary to the presumption of innocence with which the law clothes him." 216 Pa Super 286, 289; 264 A2d 173, 175.

Some notice-of-alibi statutes require the prosecutor to specify the time and place of the offense. Anno: *Validity and Construction of Statute Requiring Defendant in Criminal Case to Disclose Matter as to Alibi,* 45 ALR3d 958, § 30, p 990. See *Pearman v State,* 233 Ind 111; 117 NE2d 362, 365–366 (1954), in which reversible error was found where the prosecutor violated the provisions of an Indiana statute that required defendant to be apprised as to the exact date and place of the offense.

Michigan's notice-of-alibi provision lacks the above requirement. MCLA 768.20; MSA 28.1043. The recent amendment to the notice-of-alibi statute, 1974 PA 63, in fact only requires the prosecutor to advise defendant as to the names of the rebuttal witnesses. The prosecutor is not required to give notice of the specific time or place upon which he is relying.

It is clear that a Michigan defendant has the burden to require the prosecutor to specify a certain day or time of the offense. MCLA 767.45(2); MSA 28.985(2) states that an information is to specify the time of the offense "as near as may

be", but a variance as to the time of the offense will not result in reversible error "unless time is of the essence * * * ". MCLA 767.51; MSA 28.991 states:

"Except insofar as time is an element of the offense charged, any allegation of the time of the commission of the offense, whether stated absolutely or under a videlicet, shall be sufficient to sustain proof of the charge at any time before or after the date or dates alleged, prior to the finding of the indictment or the filing of the complaint and within the period of limitations provided by law: Provided, That the court may on motion require the prosecution to state the time or identify the occasion as nearly as the circumstances will permit, to enable the accused to meet the charge."

In light of the above statute, it has been held that a defendant is, "at least within reasonable bounds", required "to take notice that the prosecution may, after all, offer proof of another date than that expressly alleged". *People v Fitzsimmons,* 320 Mich 116, 123; 30 NW2d 801 (1948), *cert den,* 335 US 820; 69 S Ct 42; 93 L Ed 374 (1948). *People v Sherrod,* 32 Mich App 183, 186; 188 NW2d 221 (1971), clearly placed the burden upon defendant to seek specificity from the prosecutor as to the date, time and place of the offense "for the purpose of giving notice of an alibi defense". See also *People v Levy,* 28 Mich App 339, 341–342; 184 NW2d 325 (1970), *lv den,* 384 Mich 801 (1971), *cert den,* 404 US 827; 92 S Ct 59; 30 L Ed 2d 55 (1971).

Although defense counsel failed to specifically file a motion seeking specificity pursuant to MCLA 767.51; MSA 28.991, we find that in reality defense counsel's vigorous pursuit at both the preliminary examination and at the beginning of trial, of a specific date, met the practical requirements of the statute. Although we decline to specifically adopt

the rule of *Commonwealth v Boyer, supra,* we find that from the circumstances present in this case, the defendant met the requirement to seek specificity.

The crux of the problem becomes the third point in defendant's issue three. Is the variance between the date of the offense as alleged in the information, and the evidence of the date of the offense fatal to defendant's conviction? We find that the variance was not fatal to the conviction. At the outset we must reject defendant's contention that there was no proof, other than Michael Gary's testimony that the transaction took place May 25, which would tend to establish that the offense occurred at some other particular time. We have previously noted that the evidence, and the reasonable inferences to be drawn therefrom, show that the transaction took place May 21, or May 22, 1973.

*People v Helzer,* 54 Mich App 285, 288–289; 220 NW2d 735 (1974), *lv granted,* 392 Mich 818 (1974), found reversible error where the trial court failed to instruct the jury to confine its deliberations to the time period supported in the record. In the course of its discussion of the issue, *Helzer* stated:

"The people are entitled to some latitude in fixing the date of the offense. Where, as here, the date is not alleged with particularity, variance is not fatal provided the verdict is confined to the particular act within the scope of the complaint upon which the people introduce evidence for the purpose of procuring a conviction. *People v Leneschmidt,* 260 Mich 671; 245 NW 544 (1932); *People v King,* 365 Mich 543; 114 NW2d 219 (1962)." 54 Mich App 285, 288.

Unlike *Helzer,* the instant case does not involve the fact finder going beyond the record to find defendant guilty of an act committed on "any

other possible date * * * ". In *Leneschmidt,* cited in *Helzer,* two acts were proven, but the trial court "carefully confined conviction to the one charge". *Leneschmidt* noted that defendant knew, by way of the complaining witness' testimony at the preliminary examination that the witness "was uncertain of the date, but the occasion was made clear". The court further noted that defendant's alibi evidence covered the time relied upon by the prosecutor as fully as the date named in the complaint. 260 Mich 671, 672. In the instant case, defendant's alibi evidence covered May 22 to May 25, although defendant's neighbors, Gertrude and Elgie Flowers, testified they saw defendant either "every day" or "about four days" during the week which ended May 25, 1973. Also, an examination of the preliminary examination testimony makes it clear that defendant could not have delivered the marijuana on May 25. Michael Gary had the substance for at least a day before he delivered it to Jeff Miller, who testified that he received the substance on a Wednesday, the 23rd, and kept it in his locker until Friday, the 25th. In fact, Michael Gary, in response to defense counsel's questions, said that he might have delivered the substance on the 24th or some afternoon "around the 25th". Although there was some uncertainty as to the specific date of the offense, the occasion, namely, the delivery of the substance, was made quite clear.

Unlike the situation present in *People v Davis,* 175 Mich 594, 595–596; 141 NW 667 (1913), only one act or offense, rather than "many acts", was at issue. Likewise, this case is unlike *People v King,* 365 Mich 543, 545–546; 114 NW2d 219 (1962), in which another distinct offense was obviously relied upon by the fact finder to convict defendant.

It is clear that although there was some uncertainty as to the exact date of the offense, there was no ambiguity as to whether only one offense was involved. The fact finder clearly did not find defendant guilty of an offense other than the one at issue. Unlike the situation in *People v Jenness,* 5 Mich 305, 328 (1858), the fact finder did not choose among numerous acts and "find the defendant guilty of the act so selected". See, *People v Clark,* 33 Mich 112, 114–115 (1876). As in *Turner v People,* 33 Mich 363, 378–379 (1876), the particular transaction testified to at trial was described at the preliminary examination, and it was that transaction for which defendant was tried and convicted. No error was committed in this situation.

By way of a supplemental brief, defendant has argued that the district court lacked jurisdiction to conduct the preliminary examination. This issue has recently been decided adversely to defendant in *People v Milton,* 393 Mich 234; 224 NW2d 266 (1974).

Affirmed.